**Douglas A. Hollern, MD**
**Board Certified Orthopedic Spine Surgeon**

**COMPULSORY MEDICAL EXAMINATION (CME)**

**EXAMINEE NAME:** Terry, Michelle

**DATE OF SERVICE:** January 23rd, 2025

Ms. Terry comes to the office today January 30th, 2025 for the performance of her CME.

Ms. Terry presents to the office today for her compulsory medical examination (CME). She reports being involved in an accident where a stack of chairs fell on her head on June 3rd, 2023. She is accompanied by her daughter. After the apparent chairs fell on her head, she reported neck pain and headaches for which she sought treatment. She states she was only having neck pain which she reported was mild in nature. Ms. Terry denies that she was having any shoulder pain or peripheral numbness in her arms bilaterally. She denies any type of loss of balance or radicular symptoms. She does have a history of mild neck pain and lower back pain in which she was involved in a previous lawsuit in 1993. She sought medical care with the onboard ship physician where it was reported there were degenerative changes on imaging without any fractures or frank neural compromise. Previous imaging of the neck does note degenerative changes throughout the cervical, thoracic, and lumbar spine. There are no reports of loss of balance or myelopathic issues after the incident. After the incident, she reports using physical therapy and other nonoperative modalities for her injury including PT, ice, and epidural injections after which she reported moderate relief. She did have a surgical consultation for her degenerative disc disease and had a surgery done in September 2024 for her neck. She reports that her neck pain was severe but she denies any myelopathic or radicular symptoms. When asking her to trace out any pain, she reports it is all in the paraspinal musculature. Along with her nonoperative modalities including cervical facet injections, she has a diagnosis of osteoarthritis which is a degenerative condition noted on X Rays. There are mild stenotic features, however, I do not see any frank stenosis or signs of acute trauma. Of note, she does report a previous lawsuit for her back. She does report her back pain is controlled with physical therapy and there was no exacerbation to her back.

**PHYSICAL EXAMINATION**

Healthy-appearing female who sits in the chair and walks with a normal gait. She has no difficulty with tandem gait. Romberg's test is negative. She has a well-healed excision on her neck. Examination of the cervical spine is benign. She has a normal lordotic alignment without asymmetry. No tenderness to palpation in the midline and the paraspinal musculature. Cervical and lumbar range of motion is normal within normal limits. Spurling's test is negative. Hoffman's test is negative.  In the upper extremities, the range of motion is within normal limits, and normal muscle bulk is maintained. There is no irritability of range of motion in all major joints with manual motor testing. Sensation to light touch is intact from C5-T1 dermatomes. She is normally reflexive in the upper extremities. Motor strength is 5/5 in the bilateral upper extremities. Examination of the lower extremities notes no irritability of range of motion in all major joints. Motor strength 5/5 in hip flexion, hip abduction, knee flexion, knee extension, ankle dorsiflexion, ankle plantarflexion, and EHL flexion. She has no clonus bilaterally. Seated nerve tension test is negative bilaterally.

**Douglas A. Hollern, MD**
**Board Certified Orthopedic Spine Surgeon**

**IMAGING**

Imaging of the cervical spine notes severely degenerative changes throughout her cervical spine. In her initial imaging in 2023, there is spondylosis which is a form of osteoarthritis. There is no cord compression. Imaging after the accident coincides with the MRIs and X Rays consistent with a multilevel spondylosis which is a form of degenerative disc disease and arthritis, all of which is chronic. Imaging also notes an anterior based surgery in which two disc replacements were appropriately placed on September 30th, 2024.

Of note, there is severe arthritis and degenerative changes in the posterior elements of the spine that are not consistent with any type of injury and are degenerative in nature.

**Review of Records:**

1. Ascension St. Vincent's Riverside - Radiographic Studies
2. Physician Partners of America Records
3. PI's Responsive Documents to Def.'s Initial Discovery
4. Plaintiff's Initial Disclosures
5. Radiology Associates Orange Park
6. Injury Care Center - Radiographic Studies
7. Injury Care Centers Oakleaf
8. Radiology Imaging Associates - Orange Park
9. PT Associates of Orange Park
10. Ascension St. Vincent's Clay Medical Records
11. Dr. Mark Clayman Plastic Surgery Medical Records
12. Terry PI Answers to Def's Interrogatories
13. Atlus Medical Records
14. Spine, Brain, and Joint Institute Records
15. Neuro Doc Records
16. Avecina Records
17. PT Associates of Orange Park MR
18. Second Amended Complaint
19. Publix Pharmacy Records
20. Answer and Affirmative Defenses to Second Amended Complaints

**DISCUSSION**

I have examined the supporting documentation, physical examination, and history of this incident in 2023. Ms. Terry reports she had a stack of chairs fall on her which caused neck pain. She also reports that her injury was secondary to this accident. She notes she has a history of spine issues related to a previous lawsuit that is noted within the record review. From a spine standpoint, imaging, medical history, and physical examination are in strong favor of a degenerative picture. Her cervical pathology is severely

**Douglas A. Hollern, MD**
**Board Certified Orthopedic Spine Surgeon**

degenerative in nature and secondary to her having this long history of this degenerative pathology. Although the stacks of chairs fell on her, it did not cause any type of catastrophic disc or spine injury that would require any type of surgical intervention. There was no exacerbation of her previous pathology either. Her cervical pathology is primarily from an osteoarthritis component and although she has these changes on imaging, it was present prior to her surgery and prior to her accident. For this type of injury, she had an examination for an alleged traumatic brain injury which is out of the scope of this specific CME. However, given the mechanism of her incident, it is unlikely that this caused her cervical pathology. There are no fractures or frank pathology that would influence me to believe that the causation is this incident and would require surgery. There would be no reason to have surgery based on thisreported accident. The imaging from record review, based on my interpretation and the interpretation of several board certified radiologists does note a degenerative spine that was present previous to her accident was not exacerbated by the accident. Although she did have this unfortunate incident, usually these types of contusions do very well with nonoperative therapies including home physical therapy, ice, and over the counter medications maximally. I do not see any reason to assign any type of disability associated with this type of low energy accident.

 The opinions expressed in this report are all within a reasonable degree of medical certainty and based on my personal assessment of the claimant and review of supporting documentation. I request the opportunity to review any additional information which becomes available and may generate an addendum. Additionally, I reserve the right to amend any or all opinions should new information be provided.

We confirmed that the person examined was the claimant on the basis of photographic identification. I explained that this was a defense CME and that I was not in the role of a treating physician. No physician-patient relationship existed nor was one implied. I attest to having the scope of licensure or certification that typically manages the medical condition, procedure, treatment, or issue in this case. I have current, relevant knowledge and experience to render an opinion for this case, my opinions and conclusions are based solely upon the review of the medical records submitted as well as the results of my examination, if applicable. There is no conflict of interest known to me regarding the specific case. I have received no financial incentive or compensation that is dependent in any way on the opinion I have rendered. No delegation of this examination and/or review was rendered.

**Douglas A. Hollern, MD**