UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 2024-CA-22067-RKA

MICHELLE TERRY,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND DISPUTED FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, MICHELLE TERRY, by and through her undersigned counsel files this, her Statement of Material Facts and Statement of Disputed Facts in Opposition of Defendant, CARNIVAL CORPORATION's (hereinafter "CARNIVAL") Motion for Partial Summary Judgment [DE 46] and Statement of Material Facts in Support of its Motion for Summary Judgment [DE 45] and states as follows:

## STATEMENT OF UNDISPUTED FACTS

1. Plaintiff does not dispute ¶ 1 of Defendant's Statement of Material Facts in Support of its Motion for Partial Summary Judgment (herein "Defendant's Statement of Material Facts"). [DE 45].

2. Plaintiff does not dispute ¶ 2 of Defendant's Statement of Material Facts. *Id.*

3. Plaintiff does not dispute ¶ 3 of Defendant's Statement of Material Facts. *Id.*

4.  Plaintiff does not dispute ¶ 5 of Defendant's Statement of Material Facts.[1] *Id.*

5.  Plaintiff does not dispute ¶ 6 of Defendant's Statement of Material Facts.[2] *Id.*

**<u>PLAINTIFF'S STATEMENT OF MATERIAL FACTS</u>**

6.  Carnival has no policies and no procedures with regards to the packing, unpacking, relocating, and set up of furniture onboard its vessels including the subject vessel. See *30(b)(6) Deposition of Corporate Representative Maurice Vega*, at 8:12-25, 9:1-8, Attached as Exhibit "B". See also *id.* at 28:10-20. See also *id.* at 29:3-9.

7.   Carnival provides no instructions and does not require that crewmembers provide warnings with regards to the packing, unpacking, relocating, and set up of furniture onboard its vessels including the subject vessel. *Id.* at 9:1-8.

8.  The subject furniture was being moved from outside the ship, where the furniture was set up for use by passengers visiting the port, and returned to Deck 11 at the end of the port day. *Id.* at 10:21-25, 11:1-5.

9.  The subject chair is manufactured by Kannoa and it is the Marbella Model. *Id.* at  12: 22-25, 13:1-2.

10. The subject chair(s) weight is listed by the manufacturer as 20 pounds. *Id.* at. 13:8-15.[3]

11. The subject chair struck Plaintiff after falling from the stack. *Id.* at 15:22-25, 16:1-5.

---

[1] It is a disputed fact as to who initially stacked the chairs and wrapped them in plastic. *David Budi Raharjo's Deposition* at 20:15-20, Attached as Exhibit "A". ("I was not the one who arranged it on the trolley. It was already set up.")

[2] It is a disputed fact as to how many trolleys were used during the set-up process. who initially stacked the chairs and wrapped them in plastic. *David Budi Raharjo's Deposition* at 20:15-20. ("Q: How trolleys were there? A: There were two trolleys.") *Id.* at 21:14-19. (Q: "Earlier you said that you and your partner were pushing two trolleys so each one of you had a trolley? . . . A: It's one trolley. Two people.").

[3] Carnival disputes the weight of the chair claiming "it's probably closed to eight pounds." *Id.* at 14:14-25,15:1-3.

12. Carnival knew the stack of chairs was unstable. *Id.* at 16:3-5.

13. Carnival uses plastic wrap to secure the chairs during transportation. *Id.* at 23:7-17. See also *id.* at 35:24-25, 36:1-15. See also *id.* at 120:22-25, 121:1-11. "There was a plastic that wraps around the chairs and the tables **so they don't fall out**." *David Budi Raharjo's Deposition* at 22:12 – 16. (*emphasis added*).

14. Carnival's crewmember used his hands to remove the plastic wrap. *30(b)(6) Deposition* at 35:14-18. Venkatsean Ranagappa did not remove the plastic wrap. *Deposition of Ranagappa* at 20:19-21, Attached as Exhibit as "C".

15. Carnival is aware and on notice that certain types of stacking methods can cause the stack to be unstable. *Id.* at 27:25,28:1-9.

16. Carnival claims it provides on the job training. *30(b)(6) Deposition* at 28:10-20. David Raharjo had never performed the stacking process prior to the subject incident and therefore was untrained. *David Budi Raharjo's Deposition* at 19:17 – 22. Therefore, it is an undisputed fact that David Raharjo was not trained. Furthermore, Venkatsean Ranagappa, who was assigned to provide on the job training to David, testified that he never performed the chair set up process prior to the incident. *Id.* at 25:8-19. ("Q: So this is your first time doing this, correct? A: Yeah. This the first time just I bring upstairs.").

17. Carnival provided no physical warnings to passengers regarding the furniture moving and unpacking including no tape, no ropes, no stanchions, or warning cones. *30(b)(6) Deposition* at 33:16-22.

18. Carnival has no procedures for providing warnings during the furniture unpacking process. *Id.* at 34:1-4.

19. Carnival has no evidence that David Raharjo or Venkatsean Ranagappa provided warnings to passengers, including Plaintiff, during the subject incident regarding the furniture set up process. *Id.* at 59:24-25, 60:1-5.

20. Carnival states that the stack of chairs was potentially dangerous. *Id.* at 129:22-25, 130:1-8.

21. David Raharjo first contract began on June 3, 2023, onboard the *Elation* during the subject sailing. *David Budi Raharjo's Deposition* at 9:14 – 21.

22. David Raharjo first began receiving any training from Carnival on June 3, 2023. *Id.* at 11:9-11, 11:20-25. See also *id.* at pp. 12:2-5.

23. The subject incident was the first and last time that David Raharjo was asked to set up the chairs as was done in the subject incident. *Id.* at 19:17-22.

24. The subject chair hit Plaintiff in the head. *Id.* at 26:1-3, 26:10-16.

25. Plaintiff's head injury was bleeding. *Id.* at 27:14-21.

26. David Raharjo had removed the first chair from the stack of chairs and while placing the first chair on the deck the next chair in the stack fell on the Plaintiff. *Id.* at 30:2-5.

27. David Raharjo apologized to Plaintiff for causing the stack of chairs to hit her. *Id.* at 30:6-12.

28. There were no warning signs used during the chair set up process. *Id.* at 31:1-4.

29. David Raharjo did not warn the passengers of the chair set up process and claims that his partner did. *Id.* at 31:5-24.

30. Venkatsean Ranagappa first contract with Carnival and working on cruises began on December 9, 2022, onboard the *Elation*- the subject vessel. See *Deposition of Venkatsean Ranagappa* at 6:11-13. See also *Id.* at 11:19-24.

31. Venkatsean Ranagappa testified that it is Carnival's policy of closing the area during certain cleaning processes. See *Deposition of Venkatsean Ranagappa* at 9:3-14.

32. Venkatsean Ranagappa testified that it is Carnival's policy of closing the area keeps guests safe. *Id.* at 9:15-25,10:1-4.

33. Venkatsean Ranagappa testified that there were guests present in the area and the area was not closed off during the unpacking process. *Id.* at 21:1-10.

34. Venkatsean Ranagappa testified that he never performed the chair set up process prior to the incident. *Id.* at 25:8-19. ("Q: So this is your first time doing this, correct? A: Yeah. This the first time just I bring upstairs.").

### STATEMENT OF DISPUTED MATERIAL FACTS

35. Carnival claims that there "might have been two or three chairs on the trolley." *30(b)(6) Deposition of Maurice Vega* at pp. 16:6-13. See also *id.* at 86:9-11. Carnival's Crewmember, David Raharjo, claims that there were five or six chairs on the trolley. *David Budi Raharjo's Deposition* at 21:25, 22:1-7. The written statement of David Raharjo does not contain the number of chairs. *30(b)(6) Deposition* at 63:8-12. Venkatsean Ranagappa testified that it is "[j]ust only there are four chairs, sir, just only four chairs. . . [n]ot all the chairs, just only four chairs." See *Deposition of Vanekesan Ranagappa* at 19:7-11. He later testified "[o]nly I bring up two chairs only. I don't know which set. I don't remember that well. Just to give two chairs, I will bring to upstairs." *Id.* at 22:1-3. He later testified "I don't bring a lot of chairs, just three chairs[.]" *Id.* at 24:4-5. This is a disputed material fact that would change the number of chairs that may have struck the Plaintiff, and their combined weight, and the stack height from which the chair fell.

36. Carnival does not know the type of trolley involved in the subject incident. *30(b)(6) Deposition* at pp. 18:22-25, 19:1-2. This is a disputed material fact that would change the height from which the chair fell.

37. Carnival claims that crewmembers should provide "verbal notification" yet does not provide any information or education to crewmembers regarding this alleged practice. See *30(b)(6) Deposition* at 34:5-14. Carnival claims that David Raharjo and Venkatsean Ranagappa gave "verbal instructions to passengers to clear the areas[.]" *Id.* at 23:24-25. This is a disputed fact as Carnival states it has no policies, no procedures, provides no instructions and does not require crewmembers provide warnings with regards to the packing, unpacking, relocating, and set up of furniture onboard its vessels including the subject vessel. See *id.* at 8:20-25, 9:1-8. David Raharjo's handwritten statement after the incident makes no reference to any warnings given to passengers. *Id.* at 67:3-9. See also *id.* at 70:15-21. Furthermore, David Raharjo testified that he did not give any warnings. *David Budi Raharjo's Deposition* at 31:1-14. Venkatsean Ranagappa testified that he did not speak with any of the guests. *Deposition of Vanekesan Ranagappa* at 22:4-25, 23:1-2. ("Q: Okay. Ven, do you speak English? A: Yes, sir, a little."). He states that he was too far away from the incident. *Id.* at 27:14-25, 28:1-5.

38. It is a disputed fact as to David Raharjo's and Vanekesan Ranagappa's ability to communicate with passengers in English. See *30(b)(6) Deposition*, pp. 39:5-11. David Raharjo's deposition was conducted through an interpreter. *David Budi Raharjo's Deposition* at 4:3-7. "[A]t that time my English was not as good. *Id.* at 34:9-10. David's statement was written in English and he did not understand it. *Id.* at 35:2-9. ("I understand very little[.]"). Vanekesan Ranagappa speaks very little English. See *Deposition of Vanekesan Ranagappa* at 4:7-8. ("Q: Okay. Ven, do you speak English? A: Yes, sir, a little.").

39. Carnival does not know the height from which the chair(s) fell from the stack. See *30(b)(6) Deposition*, 25:11-16.

40. Carnival does not how the chairs were stacked. *Id.* 26:23-25, 27:1-9. Carnival states that "it would just depend on how those chairs can be stacked or how they're instructed to be stacked." *Id.* at 27:7-9. This is a disputed fact as the type of stack that would affect the force of the chair(s), the angle of the chair(s), and the height of the chair(s). Furthermore, Carnival states it has no policies, no procedures, and provides no instructions to crewmembers. *Id.* at 8:20-25, 9:1-8.

41. Carnival claims that Plaintiff "could have moved, she could have heeded the warning that was given or the instruction that was given." *Id.* at 58:25, 59:1-17. It is a disputed fact as to whether a warning or instruction was given. Furthermore, David Raharjo testified that he did not give any warnings. *Deposition of David Raharjo* at pp. 31:1-14. Venkatsean Ranagappa testified that he was too far away from the incident to provide any warnings to the passengers. *Id.* at 38:1-4.

42. Carnival disputes the weight of the stack of chairs. See *30(b)(6) Deposition*, at 87:23-25, 88:1-25, 89:1-25, 90:1-3. See also *id.* at pp. 105:3-10.

43. Carnival states that there is no need for a policy on the movement of objects (equipment, furniture, etc.) by trolley as "this has not occurred before[.]" *Id.* at pp. 103:15-25, 104:1. This is a disputed fact because there are numerous prior similar incidents involving crewmembers causing injuries while operating trolleys while moving various items. See *Plt.'s Request for Judicial Notice*, at Ecf. 51 and Exhibits 51(a)-(g). Furthermore, Defendant contends that in its Statement of Material Facts there are no prior substantially similar incidents. DE 45 at ¶ 8. Plaintiff believes that the prior substantially similar incidents demonstrate that this is a disputed fact.

44. Carnival does not know who stacked the chairs and wrapped them in plastic prior to transport. *David Budi Raharjo's Deposition* at 20:15-20. ("I was not the one who arranged it on the trolley. It was already set up.") See *30(b)(6) Deposition*, 36:1-7. ("I would imagine, but it would be just a presumption, that they do it before -- downstairs as they're loading it up, but that would be better suited to ask either one of them as to when they did that."). Therefore, Plaintiff disputes ¶ 4 of Defendant's Statement of Material Facts as Carnival states "Two Carnival Crewmembers were transferring chairs from the port outside the ship up to the Deck 11 smoking area." DE 45 at ¶ 4 . Given it is unknown who stacked the chairs and wrapped them in plastic, it is likely that other crewmembers (more than the two identified) were involved in the initial staging for transport. Venkatsean Ranagappa testified that he was not responsible to wrap the chairs and was only assigned to transport them to Deck 11. *Deposition of Venkatsean Ranagappa* at pp. 16:24-25, 17:1-9. ("Q: You job—you wrap the chairs? A: No, not me. The person wrapping. Just I bring upstairs."). See also *id.* at 18:3-10. ("Q: Who wraps them? A: I don't know, sir, a crew member.").

45. There is a dispute about the number of trolleys being transported. *David Budi Raharjo's Deposition* at 20:15-24. ("Q: How trolleys were there? A: There were two trolleys.") *Id.* at 21:14-19. (Q: "Earlier you said that you and your partner were pushing two trolleys so each one of you had a trolley? . . . A: It's one trolley. Two people.").

46. Carnival claims that "[s]ome time thereafter, Plaintiff was contacted with a chair that fell from the trolley. While it is undisputed that Plaintiff was hit in the head by a falling chair, Plaintiff contends that this statement is an incorrect characterization of events. *David Budi Raharjo's Deposition* at 30:2-5.

**<u>CERTIFICATE OF SERVICE</u>**

**I HEREBY CERTIFY** that on April 2, 2025, electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

BY:     */s/ Glenn J. Holzberg*
GLENN J. HOLZBERG
Fla. Bar Number: 369551

## SERVICE LIST
Case No.: 24-CV-22067-ALTMAN

**GLENN J. HOLZBERG, ESQ.**
Florida Bar No: 369551
glenn@holzberglegal.com
erika@holzberglegal.com
**LOUIS M. HOLZBERG, ESQ.**
Florida Bar No: 1011340
louis@holzberglegal.com
erika@holzberglegal.com
**HOLZBERG LEGAL**
Offices at Pinecrest II, Suite 220
7685 S.W. 104th Street
Miami, FL 33156
Telephone: (305) 668-6410
Facsimile: (305) 667-6161
*Attorneys for Plaintiff*

**NEIL D. GORNTO**
Florida Bar No. 20916
ngornto@farahandfarah.com
tedwards@farahandfarah.com
**FARAH AND FARAH**
10 West Adams Street
Jacksonville, Florida 32202
Telephone: (904) 664-8169
Facsimile: (904) 474-8826

**MICHAEL J. DRAHOS, ESQ.**
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
**W. COOPER JARNAGIN, ESQ**
Florida Bar No. 117767
cooper.jarnagin@gray-robinson.com
**ASHLEY GENOESE, ESQ.**
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com
**GRAYROBINSON, P.A.**
515 North Flagler Drive, Suite 650
West Palm Beach, Florida 33401
Telephone: (561) 268-5727
Facsimile: (561) 268-5745
*Attorneys for Defendant*