UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 2024-CA-22067-RKA

MICHELLE TERRY,

     Plaintiff,

 v.

CARNIVAL CORPORATION,

     Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, MICHELLE TERRY, by and through her undersigned attorneys, and pursuant to Fed. R. Civ. P. 56(a), responds to Defendant CARNIVAL CORPORATION's Motion for Summary Judgment [DE 46] and Statement of Material Facts in Support of its Motion for Summary Judgment [DE 45]. In support of her response, Plaintiff states as follows:

### I.  INTRODUCTION

This is a maritime personal injury action in which, on, or about, June 5, 2023, Plaintiff, MICHELLE TERRY, was seated on Deck 11 onboard the *Elation*, (the "subject vessel"), in the smoking area (the "subject area"), where behind and unknown to Plaintiff, Carnival crewmembers were unpacking furniture including chairs. See *Plt.'s Second Amended Complaint*, Ecf. 20 at ¶ 11-14. The furniture was wrapped in plastic wrap, stacked on dollies and/or luggage carts, and moved to Deck 11 by Carnival's crewmember(s) when suddenly, and without warning to Plaintiff or other passengers, one of the Carnival crewmember(s) caused the stack of furniture, including the chairs to fall and slam into Plaintiff striking multiple areas of her body including, but not limited to, her

head, neck, shoulder, arms, and back. *Id.* at ¶ 15-17. As a result, Plaintiff suffered injuries including a traumatic brain injury and injuries to her neck and back requiring surgery to her cervical spine and surgical recommendations for her thoracic spine. *Id.* at ¶ 18-19.

## II.    PROCEDURAL HISTORY

Plaintiff initiated this negligence action against the Defendant, CARNIVAL CORPORATION (herein "Carnival"), on May 30, 2024. See *Plt.'s Initial Complaint*, Ecf. 1. A jury trial is presently set to begin on June 16, 2025. See *Order Setting Trial*, Ecf. 15. Defendant, Carnival, filed a Motion to Dismiss on August 6, 2024. See *Def.'s Motion to Dismiss*, Ecf. 5. In response to Carnival's Motion to Dismiss, Plaintiff filed her Amended Complaint on June 20, 2024. See *Plt.'s Amended Complaint*, Ecf. 16. The Court denied Carnival's Motion to Dismiss as moot. See *Order Denying Def.'s Motion*, Ecf. 17 (August 20, 2024). Thereafter, the Court struck Plaintiff's Amended Complaint with leave to amend. See *Order Striking Plt.'s Amended Complaint*, Ecf. 19 (August 23, 2024). Thereafter, Plaintiff filed her Second Amended Complaint on August 30, 2024, which is the subject of the instant Motion for Summary Judgement. See *Plt.'s Second Amended Complaint*, Ecf. 20. Defendant, Carnival, filed a Motion to Dismiss the second Amended Complaint on September 12, 2024. See *Def.'s Motion to Dismiss*, Ecf. 23. Thereafter, the Court granted Carnival's Motion to Dismiss on Counts IV (Negligent Policies and Procedures) and V (Negligent Training) of Plaintiff's Second Amended Complaint. See *Order Granting Motion to Dismiss*, Ecf. 31 (October 2, 2024). Defendant, Carnival, now moves on a Motion for Partial Summary Judgment [DE 46] on Count II and Count III.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S.

317, 322 (1986); see also Fed. R. Civ. P. 56. "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Feijoo v. Geico Gen. Ins. Co.*, 137 F.Supp.3d 1320, 1325-26 (S.D. Fla. 2015) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997)). "An issue of fact is 'genuine' if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Id.* at 1326.

The moving party has the burden of showing that no genuine issue remains as to any material fact. *Id.* "In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party." *Id.* (citing *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001)). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); see also Fed. R. Civ. P. 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." See *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505 at 2510 (1986). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011).

### a. General Maritime Law applies to Plaintiff's Claims

This Court has found that General Maritime Law applies. *Breaux v. NCL (Bahamas) Ltd.*, 2022 WL 2304254, at *6 (S.D. Fla. June 24, 2022) (Altman, J.); see also *Keefe*, 867 F.2d at 1320. ("Claims arising from torts committed aboard ships on navigable waters are governed by general

maritime law."). Under maritime law, a shipowner has a duty to exercise reasonable care to those aboard the vessel who are not members of the crew. See *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959). However, a shipowner "is not liable to passengers as an insurer, but only for its negligence." *Keefe*, 867 F.2d at 1322.

To prove negligence in a maritime-tort case, "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012). "With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This reasonable-care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe*, 867 F.2d at 1322. "Actual notice exists when the defendant knows of the risk-creating condition," *Gorczyca v. MSC Cruises, S.A.*, 715 Fed. Appx. 919, 921 (11th Cir. 2017), while constructive notice exists when the defendant "should have known of the dangerous condition," *Woodley v. Royal Caribbean Cruises, Ltd.*, 472 F.Supp.3d 1194, 1204 (S.D. Fla. 2020) (Moore, C.J.).

## IV.   ARGUMENT

### a.   Carnival has Actual Notice of the Condition its Employees Created

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). In the present case, Carnival acknowledges that two crewmembers were transferring chairs from out

the ship while in port in Nassau. See *Def.'s Statement of Material Facts* at ¶ 4, Ecf. 45 (Citing *David Budi Raharjo's Deposition* at 19:11 – 16., Ecf. 45-3).

During the unpacking process, on June 5, 2023, David Budi Raharjo was involved in an incident that caused the stack of chairs to fall over and strike Plaintiff. *David Budi Raharjo's Deposition* at 18:14 – 20., Ecf. 45-3. Prior to this incident, David Budi Raharjo had never been involved in the chair set up process and according to his testimony was never involved again. *Id.* at 19:17 – 22. ("[Answer:] I have never. So that was the first time and the last time."). Prior to the subject incident, David Budi Raharjo had only worked onboard *any* cruise ship, Carnival or otherwise, for 2 days. *Id.* at 9:11 – 13. ("My first contract started on 3rd of June, 2023."). Furthermore, Carnival's own Expert, Dr. Amy Courtney, acknowledged in her testing the propensity for the purported exemplar stack of chairs to become unsteady and fall.  See *Expert Report of Dr. Courtney*, Ecf[1] ("The only arrangement that made sense and that was **somewhat stable** involved a set of four chairs and two tables." (*emphasis added*)). Carnival had actual notice of the dangerous condition that it created.

The present case is analogous to another Carnival case, involving a passenger while onboard the Carnival *Conquest* who was burned by excessively hot soup, that Carnival was on actual notice of the dangerous condition it created. *Fadraga v. Carnival Corporation*, Case No.: 2023-cv-23503 at *2, (S.D. Fla. April 30, 2024) (Scola, R.). In *Fadraga*, on an Order Denying a Motion to Dismiss, Judge Scola states that "Carnival gives short shrift to its argument that it didn't have actual notice of any risk-creating condition." *Id.* at *2. Judge Scola continues by explaining that "[w]ithout any further breakdown or analysis from Carnival, the Court is hard pressed to agree with Carnival: these

---

[1] Plaintiff merely raises this point to demonstrate that according to Carnival's own expert, that Carnival had actual notice of the instability and foreseeability of the stack of chairs to fall. Plaintiff does not waive her Daubert challenge of Dr. Courtney's testimony and opinions as raised in it Omnibus Daubert Motion [DE 47].

facts . . . are sufficient to allow the Court to draw the reasonable inference that, at a minimum, the soup being served to Fadraga from the buffet was dangerously hot." *Id.* at *4. Plaintiff recognizes that this Order was decided on a Motion to Dismiss; however, the logic employed by the court in *Fadraga* is analogous. The facts alleged in Plaintiff's Second Complaint argue that Carnival was negligent in its transport and set up of the stack of chairs, and breached its duty owed to Plaintiff, by failing to warn passengers of the set-up process or close the subject area prior to commencing with the set-up process. See generally *Plt.'s Second Amended Complaint*, Ecf. 20. Plaintiff has supported those facts through testimony of David Budi Raharjo, who had only worked on a cruise ship, in his career for 2 days. *David Budi Raharjo's Deposition* at 9:11 – 13. David Budi Raharjo admits that on June 5, 2025, "there was an incident where [David and his partner] were setting up the chairs and the table and there was one chair that fell on the guest. Because of that incident, that made it the last time [David] was to bring chairs and tables up there." *Id.* at 19: 23-25, 20: 1-7. In *Fadraga*, Judge Scola states "the Court would be hard pressed to ignore the reasonable inference that Carnival would be aware of how hot soup was that Carnival itself had prepared and served." *Fadraga*, Case No.: 2023-cv-23503 at *5. This is analogous to the present case, as according to David Budi Raharjo, "[he] was not the one who arranged it on the trolley. It was already set up. All [he] was tasked to do was to bring it alongside [his] partner." *David Budi Raharjo's Deposition* at 20:15-20. Again, this is analogous to *Fadraga*, where Carnival "prepared and served soup that was so hot that, even after being transported from the buffet to Fadraga's table, it resulted in severe burns to Fadraga's legs when it was spilled." *Fadraga*, Case No.: 2023-cv-23503 at *5. Judge Scola then opines:

> "To that end, Fadraga's case is readily distinguishable from cases like *Holland v. Carnival Corp.*, 50 F.4th 1088 (11th Cir. 2022), and *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022), cert. denied, 143 S. Ct. 212 (2022) where passengers sued Carnival for injuries sustained when they slipped and fell because of transient substances underfoot. In

those cases, unlike here, there were no allegations that Carnival had any idea that the dangerous conditions existed before the plaintiffs encountered them. For example, there were no allegations that a crew member deposited the transient substances or even viewed them—just that it was possible that a crewmember "may have been in a position to see," for example, "that there was a liquid on the stairs in question." *Holland*, 50 F.4th at 1092 (quoting the district court). Here, to the contrary, the allegations establish that Carnival had direct contact and involvement with an arguably palpable hazard." *Id.* at *5-6.

In the present case, David, an untrained crewmember, was tasked to move a dangerous stack of chairs that he had never been instructed on how to safely move and/or set up. *David Budi Raharjo's Deposition* at  21:3-5. ("[Question]: How were you trained in using the trolley? A. I was never trained on it."). This is analogous to *Fadraga* as David had direct contact and involvement with the "arguably palpable" hazard that was the stack of chairs that had been wrapped in plastic to prevent dangers because of shifting, tipping over of the chairs.

Accordingly, courts have found that crew members being in proximity to the dangerous condition is sufficient for a finding of notice. *J.K. v. Classica Cruise Operator Ltd., Inc*., No. 22-cv-61184-WPD, 2023 U.S. Dist. LEXIS 194468, at *12 (S.D. Fla. Oct. 26, 2023); *Haiser v. MSC Cruises (USA) Inc*., 2019 U.S. Dist. LEXIS 170754, 2019 WL 4693200, at *5 (S.D. Fla. 2019) (denying summary judgment for defendant because crew members in close proximity to spilled water was sufficient to establish notice). In *J.K.* the court found judgment for a plaintiff that fell off an improperly placed ladder on a bunk bed. *J.K.*, 2023 U.S. Dist. LEXIS 194468, at 8. The court found that the defendant "had actual notice because its own crew members had assembled the bunk and had personally seen its condition." *Id.* at 12. In the present case, the two crew members responsible for the incident were in proximity to the stack of chairs and had personally seen the stack of chairs and had even torn open the plastic to access the chairs. *David Budi Raharjo's Deposition* at 23:2– 11 ([Answer:] we took off the plastic wrap that was holding the tables and chairs

together.... [Answer:] I tore through the plastic wrap using my hands because we did not bring the tool to open up the plastic.). Thus, the Defendant had actual notice of the condition.

### b. Carnival is on Notice of this Dangerous Condition

"With respect to the duty element in a maritime context, 'a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). This reasonable care standard "requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition, at least where . . . the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Keefe v. Bahama Cruise Line*, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989). "Plaintiff can establish notice by showing that Defendant knew about or had constructive notice of the purported risk-creating condition." *Taylor v. Royal Caribbean Cruises Ltd.*, 437 F.Supp.3d 1255, 1259-60 (S.D. Fla. 2020) (citing *Sutton v. Royal Caribbean Cruises Ltd.*, 774 Fed.Appx. 508, 511 (11th Cir. 2019)). Plaintiff may show constructive notice by submitting evidence (1) that the risk-creating condition "existed for a sufficient period of time to invite corrective measures" or (2) "of substantially similar incidents in which conditions substantially similar to the occurrence in question must have caused the prior incident." *Sutton*, 774 Fed.Appx. at 511.

### i. Corrective Measures are Evidence of Notice

The stack of chairs was wrapped with plastic wrap. This is clear evidence that Carnival either *knew* or should have known of the dangerous condition- as corrective measures are demonstrative of notice. *Anders v. Carnival Corp.*, No. 23-21367-CIV-ALTONAGA/Damian, 2023 U.S. Dist. LEXIS 112642, at *17 (S.D. Fla. June 29, 2023) (finding that a plaintiff alleging a

corrective measure was sufficient to survive a motion to dismiss for proving notice). "Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1265 (11th Cir. 2020). Evidence of corrective measures that establish actual notice vary. *Lawing v. Carnival Corp.*, No. 24-cv-22101-BLOOM/Elfenbein, 2024 U.S. Dist. LEXIS 203654, at *20 (S.D. Fla. Nov. 7, 2024) (evidence that there was a crewmember with a mop near the area of the incident was a corrective measure sufficient to prove actual notice); *Peavy v. Carnival Corp.*, 673 F. Supp. 3d 1286, 1292 (S.D. Fla. 2023) ("the existence of a 'wet floor' warning cone and non-slip strips, is sufficient to support an actual notice claim…."); *Harnesk v. Carnival Cruise Lines, Inc.*, No. 87-2328-CIV-DAVIS, 1992 AMC 1472, 1991 WL 329584, at *4 (S.D. Fla. Dec. 27, 1991) (warning strips placed on a trip hazard were evidence of notice of the dangerous condition).

In the present case, it is undisputed that "the chairs were stacked on a trolley and **secured** by plastic wrap." See *Carnival's Statement of Material Facts*, Ecf. 45, at ¶ 5. Carnival is on clear notice of the dangerous condition- the propensity for stack of chairs that it was (were) *somewhat stable* to either teeter and fall.  See *30(b)(6) Deposition of Corporate Representative* at 9:15-25, 10:1-6. See also *id.* at 15:22-25, 16:1-6; 87:4-17 (*See Plt.'s Statement of Material and Dispute Facts*, Ecf. 54, Exhibit "B"). Therefore, despite, allegedly, Carnival having no written policies and procedures, the stack of chairs was wrapped with plastic wrap to secure it. This plastic wrap was a corrective measure to prevent the chairs from falling over. "There was a plastic that wraps around the chairs and the tables **so they don't fall out**." *David Budi Raharjo's Deposition* at22: 12 – 16. (*emphasis added*). Actual notice exists when the defendant knows of the risk-creating condition. *See, e.g., Adams v. Carnival Corp.,* No. 08-22465-CIV, 2009 WL 4907547, at *4 (S.D. Fla. Sept. 29, 2009) ("To be sure, the record contains no evidence to show that Carnival actually

knew of a defect in the chair."). Thus, the Defendant was clearly on notice of the dangerous condition prior to the subject incident.

### ii.  Prior Substantially Similar Incident

Prior substantially similar incidents can be used as evidence that a defendant had notice of a dangerous condition. *Malley v. Royal Caribbean Cruises Ltd.*, 713 F. App'x 905, 908 (11th Cir. 2017); *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1287 (11th Cir. 2015). For a prior incident to be substantially similar, "'[t]he conditions surrounding the . . . incidents' need only be 'similar enough to allow . . . a reasonable inference concerning [Defendant's] ability to foresee this type of [accident] and its result.'" *Williford v. Carnival Corp.*, No. 17-21922-CIV-Cooke, 2019 WL 6250824, at * 3 (S.D. Fla. Nov. 22, 2019) (quoting *Sorrels*, 796 F.3d at 1280). "The substantial similarity doctrine does not require identical circumstances." *Sorrels*, 796 F.3d at 1287. *Taylor*, 437 F.Supp.3d at 1260. The law only requires that "incidents [are]similar enough to allow the jury to draw a reasonable inference" concerning the cruise ship operator's "ability to foresee" the incident at issue." See *Cogburn*, 2022 U.S. App. LEXIS 11177, at *10-11 (quoting *Sorrels*, 796 F.3d at 1287); see also *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 755 (11th Cir. 1985).

This is not the first time Carnival Cruise Lines has had an incident occur when its crewmembers were transporting equipment by trolley causing injuries to a passenger. On January 18, 2015, Mardolyn Vescovi alleges that she was injured, while a passenger on the Carnival *Miracle*, when she was struck from behind by an unsecured poker machine being transported by a dolly/cart. See *Vescovi v. Carnival Corporation*, Case No.: 16-CV-20778-UU, (S.D. Fla. March 3, 2016), Attached as Exhibit "A", Ecf. 51-1. In *Vescovi*, the passenger was struck from behind due to unsecured equipment being transported by Carnival crewmembers, which is a substantially similar to the facts of the present case. As such Carnival is on notice of the risk creating condition, including

the risk that large objects like poker machines or stacks of chairs being transported in passenger area can fall and injure nearby passengers. On October 17, 2022, Jonell DeHaven alleged that a crewmember pushing a luggage cart was removing a piece of luggage from the top of the cart when the crewmember lost control and Jonell DeHaven was struck from behind by the crewmember. *DeHaven v. Carnival Corporation*, Case No.: 23-CV-24739-JEM, (S.D. Fla. Decemberc14, 2023), Attached as Exhibit "B", Ecf. 51-2. This is analogous to the present case where David Budi Raharjo was removing the top chair from the stack of chairs on a cart and lost control injuring Plaintiff.

The Eleventh Circuit has explained, the substantial similarity doctrine does not require identical circumstances. *Sorrels*, 796 F.3d at 1287. The doctrine "allows for some play in the joints depending on the scenario presented and the desired use of the evidence." *Id.* The conditions surrounding the incidents need only be similar enough to allow a reasonable inference regarding Carnival's ability to foresee this type of accident and its results. See *Id.* The present case is not the *only* time that a crew member using a dolly/trolley/cart has caused injuries to a passenger. Additionally, for example, on June 11, 2019, Carlos Segarra alleges that he was injured, while he was a passenger on the *Carnival Sunrise*, when he was struck from behind by trolley cart being pushed by a crewmember. See *Segarra v. Carnival Corporation*, Case No.: 21-CV-23661-JEM, (S.D. Fla. October 18, 2021), Attached as Exhibit "C", Ecf. 51-3. Also, on September 9, 2017, Linda Nelson alleges that while a passenger onboard the *Carnival Conquest* crewmembers pushing a five-foot-high metal cart struck her foot from behind. See *Nelson v. Carnival Corporation*, Case No.: 18-cv-23292-FAM, (S.D. Fla. August 14, 20218), Attached as Exhibit "D", Ecf. 51-4. On August 22, 2018, a crewmember, Simone Pardo, was injured when a crewmember pushing a trolley caused something to fall off the trolley causing Pardo to slip and fall. See *Pardo v. Carnival Corporation*, Case No.: 2021-019302-CA-01 (Miami-Dade Circuit Court) (August 17, 2021), Attached as Exhibit

"E", Ecf. 51-5. Furthermore, the present case is not the *only* time that a crewmember's stack of equipment fell and caused injuries to a passenger. On July 24, 2022, a passenger, Eureka Cole, alleged she was injured by a stack of large containers that were left unsecured by crewmembers in the vicinity of passengers. See *Cole v. Carnival Corporation*, Second Amended Complaint, Case No.: 23-cv-60532-MD, Ecf. 15, (S.D. Fla. May 10, 2023), Attached as Exhibit "F", Ecf. 51-6. Lastly, the present case is not the *only* time that a crewmember's actions triggered equipment to fall and caused injuries to a passenger. On July 15, 2022, Valerie Berry, a passenger on the Carnival *Freedom*, was injured in the dining room when a crewmember dropped a tray of dishes on her while she was seated and her back was to the dangerous condition. See *Berry v. Carnival Corporation*, Case No.: 23-CV-21059-CMA, Ecf. 1, (S.D. Fla. March 13, 2023), Attached as Exhibit "G", Ecf. 51-7.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable inferences in favor of the non-moving party." *Smith v. Royal Caribbean Cruises, Ltd.,* 620 Fed.Appx. 727, 729 (11th Cir. 2015). "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). Clearly, there are genuine issues of material facts regarding whether Carnival had constructive notice based on prior substantially similar incidents. To the extent Carnival attempts to argue that the prior substantially similar incidents, notably *Vescovi*, must not have occurred too remote in time, the Court should consider that "[d]etermining the remoteness of evidence is within the trial

judge's discretion." *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988) (citing *Keyes v. School Dist. No. 1*, 521 F.2d 465 (10th Cir.1975), cert. denied, 423 U.S. 1066, 96 S.Ct. 806, 46 L.Ed.2d 657).

### iii.   Condition Existed for a Sufficient Period of Time

"Constructive notice arises when a dangerous condition has existed for such a period of time that the shipowner must have known the condition was present and thus would have been invited to correct it." *Bencomo v. Costa Crociere S.P.A. Co.,* No. 10-62437-CIV, 2011 WL 13175217, at *2 (S.D. Fla. Nov. 14, 2011), *aff'd,* 476 Fed.Appx. 232 (11th Cir. 2012). The question remains of how much time the dangerous condition existed. At the very least, the crewmembers responsible for moving the dolly and the chairs had time from the pier from where the items were transported to the elevators and up to the Deck 11 to recognize that the stack of chairs was only "somewhat stable." Furthermore, the time Carnival has been on notice of the risk creating condition extends long before this subject sailing. A plaintiff can establish constructive notice with evidence that the "defective condition existed for a sufficient period of time to invite corrective measures." *Guevara*, 920 F.3d at 720. As discussed supra, Carnival, at some point, decided to implement the external chair set up in ports of call that needed a seating area outside the vessel. Thereafter, they began moving those chairs and tables to this seating area. At some point, Carnival added a further procedure to **secure with** plastic wrap the stack of chairs during transport. See *Carnival's Statement of Material Facts*, Ecf. 45, at ¶ 5. Therefore, the amount of time Carnival either discovered the dangerous condition, or at the very least should have discovered the dangerous condition (wobbly, somewhat secure, teetering nature, requiring plastic wrap) of the stack of chairs, is sufficient to impute notice to Carnival.

### c. Genuine Issues of Material Fact

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Feijoo v. Geico Gen. Ins. Co.*, 137 F.Supp.3d 1320, 1325-26 (S.D. Fla. 2015) (citing *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997)). "An issue of fact is 'genuine' if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Id.* at 1326.

In *Richard v. Carnival Corp.*, 2018 WL 1942340 at *1, a waiter onboard the Carnival Breeze dropped a teapot from a saucer causing the teapot and its contents to burn the plaintiff. In denying Carnival's Motion for Summary Judgment, the court held that it "cannot accept Carnival's conclusion because the parties have failed to resolve important factual discrepancies bearing on the claims at issue." *Id.* at * 2. The court explained that the Richard and Carnival disagreed about numerous material facts including: (1) the temperature of the hot water; (2) the wait staffs training; and (3) the hand positions of: (a) Carnival's crewmember (i.e. not of the teapot handle) and (b) a third party with a maraca involved in the injury. *Id.* This is analogous to the present case, where Carnival and Plaintiff dispute numerous material facts including, but not limited to: (a) the number of chairs in the stack (¶ 35); (b) the height of the stack of chairs and the height from which the chair(s) fell (¶ 39); (c) the type of trolley used and the number of trolleys used (¶ 36, 45); (d) the weight of the chair(s) (¶ 42; (e) the existence of prior substantially similar incidents (¶ 43); (f) all of the crewmembers involved in the set up process (¶ 44); (g) whether any warnings were made to the passenger including Plaintiff at the time of the subject incident (¶ 37, 41); (h) whether the crewmembers were able to communicate verbal warnings in English (¶ 38); (i) the method of

stacking (¶ 40); and (j) the sufficiency of the "on the job" training of brand new hire (¶ 37). See

*Plt.'s Statement of Material and Disputed Facts*, Ecf. 53. "These are material issues of fact that the

Court cannot resolve on a motion for summary judgment." *Richards*, at * 3. The resolution of these

disputed facts requires determination and an evaluation of competing evidence—tasks properly left

for fact finder. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). When determining

whether a genuine issue of material fact exists, courts "view all evidence and draw all reasonable

inferences in favor of the non-moving party." *Smith v. Royal Caribbean Cruises, Ltd.,* 620 Fed.

Appx. 727, 729 (11th Cir. 2015). Therefore, as in *Richards*, this Court should deny Defendant's

Motion for Partial Summary Judgment as Carnival has failed to satisfy its burden.

## CONCLUSION

For all the reasons stated herein, Plaintiff respectfully requests that the Court deny

Defendant Carnival's Motion for Partial Summary Judgment (Ecf. 46).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 2, 2025, I electronically filed the foregoing document

with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served

this day on all counsel of record or pro se parties identified on the attached Service List in the manner

specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some

other authorized manner for those counsel or parties who are not authorized to receive electronic

Notices of Electronic Filing.

BY:     */s/ Glenn J. Holzberg*
        GLENN J. HOLZBERG
        Fla. Bar Number: 369551

## SERVICE LIST
Case No.: 24-CV-22067-ALTMAN

**GLENN J. HOLZBERG, ESQ.**
Florida Bar No: 369551
glenn@holzberglegal.com
erika@holzberglegal.com
**LOUIS M. HOLZBERG, ESQ.**
Florida Bar No: 1011340
louis@holzberglegal.com
erika@holzberglegal.com
**HOLZBERG LEGAL**
Offices at Pinecrest II, Suite 220
7685 S.W. 104th Street
Miami, FL 33156
Telephone: (305) 668-6410
Facsimile: (305) 667-6161
*Attorneys for Plaintiff*

**NEIL D. GORNTO**
Florida Bar No. 20916
ngornto@farahandfarah.com
tedwards@farahandfarah.com
**FARAH AND FARAH**
10 West Adams Street
Jacksonville, Florida 32202
Telephone: (904) 664-8169
Facsimile: (904) 474-8826

**MICHAEL J. DRAHOS, ESQ.**
Florida Bar No. 0617059
michael.drahos@gray-robinson.com
**W. COOPER JARNAGIN, ESQ**
Florida Bar No. 117767
cooper.jarnagin@gray-robinson.com
**ASHLEY GENOESE, ESQ.**
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com
**GRAYROBINSON, P.A.**
515 North Flagler Drive, Suite 650
West Palm Beach, Florida 33401
Telephone: (561) 268-5727
Facsimile: (561) 268-5745
*Attorneys for Defendant*