UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 2024-CV-22067-RKA

MICHELLE TERRY,

     Plaintiff,

v.

CARNIVAL CORPORATION,

     Defendant.

_____/

**PLAINTIFF'S OMNIBUS DAUBERT MOTION TO
STRIKE DEFENDANT'S EXPERTS COURTNEY AND HOLLERN**

COMES NOW, Plaintiff, MICHELLE TERRY, by and through her undersigned attorneys, and files her Daubert Motion Regarding Dr. Amy Courtney and Dr. Douglas A. Hollern, who are the subjects of this Motion. and as grounds states the following:

**I.    BACKGROUND**

Plaintiff, MICHELLE TERRY, was on a cruise vacation with Defendant, Carnival Corporation (herein "Carnival"). On June 5, 2023, Plaintiff was a passenger aboard the *Elation* (the "subject vessel"). See *Plt.'s Amended Complaint*, Ecf.16 at ¶ 11. At the time of the incident, Plaintiff was on Deck 11, in the designated smoking area (herein the "subject area"). *Id.* at ¶ 12. Plaintiff was seated in the subject area and conversing with other passengers. *Id.* at ¶ 13. Immediately behind where Plaintiff was seated, and unknown to Plaintiff, Carnival Crewmembers were opening and unpacking furniture including chairs. *Id.* at ¶ 14. The furniture was wrapped in plastic wrap, stacked on dollies and/or luggage carts, and moved to Deck 11 by Carnival's crewmember(s) for set up. *Id.* at ¶ 15. Suddenly, and without warning to Plaintiff or other

1

passengers, one of the Carnival Crewmember(s) caused the stack of furniture, including the chairs to fall and slam into Plaintiff striking multiple areas of her body including, but not limited to, her head, neck, shoulder, arms, and back. *Id.* at ¶ 16-17. Due to the forceful impact to her head, Plaintiff suffered from an altered state of consciousness. As a result of this incident, Plaintiff suffered a traumatic brain injury and other injuries including injuries to her neck and back requiring surgery to her cervical spine and surgical recommendations for her thoracic spine. *Id.* at ¶ 18-19.

Seeking redress for these injuries, Plaintiff initiated this negligence action against the Defendant, CARNIVAL CORPORATION,  on May 30, 2024. See *Plt.'s Initial Complaint*, Ecf. 1. A jury trial is presently set to begin on February 9th, 2026. See *Amended Scheduling Order*, Ecf. 73. In support of its case theory, Defendant has retained a biomechanical expert, Amy Courtney, Ph.D., CAISS, who Defendant believes can offer relevant testimony; and an orthopedist, Douglas A. Hollern, M.D., who are the subjects of this Motion.

### Dr. Amy Courtney

Dr. Amy Courtney is an Engineer with a B.S. degree in Engineering Mechanics, M.S. in Engineering Sciences, and a Ph.D. in Medical Engineering and Medical Physics. See *Defendant's Expert Witness Disclosure of Dr. Amy Courtney*, Exhibit "A", at pp. 1. Dr. Courtney is expected to provide testimony regarding her opinions as to the biomechanical mechanisms pertaining to Plaintiff's injuries and pathologies as documented in Plaintiff's medical records. *Id.* Dr. Courtney's report seeks to inject her assumptions and speculation in attempt to create evidence. Dr. Courtney's report uses inappropriate and unsupported methodology to reach her conclusions. As such, the entirety of Dr. Courtney's report lacks an appropriate evidentiary foundation and should therefore not be admitted or at the very least highly limited. Furthermore, Dr. Courtney is not a medical doctor and seeks to interject medical opinions into her report, which is beyond the scope of her expertise. As discussed more thoroughly below, Dr. Courtney should be precluded from testifying

at trial because her opinions and conclusions will not assist the trier-of-fact in determining what caused Plaintiff's injuries. The jury is well-equipped with life experience to make this determination from the very same facts that Dr. Courtney relies on, and the jury should not be subjected to the surplus facts that Dr. Courtney's report seeks to implant into evidence. Dr. Courtney's conclusions on the issues do nothing more than advocate rather than assist.

Alternatively, Dr. Courtney's opinions should be limited to her area of expertise in biomechanics and "the application of mechanical principles to biological systems, [which] is well suited to answering questions pertaining to injury mechanics", and she should be precluded from testifying as to areas that require medical experience. *Id.* at pp. 2.

### Dr. Douglas Hollern

Dr. Douglas Hollern is a Board-Certified Orthopedic Spine Surgeon. See *Defendant's Expert Witness Disclosure of Dr. Douglas Hollern*, Exhibit "A", at pp. 1. Dr. Hollern is expected to provide testimony regarding his opinions as to Plaintiff's injuries and pathologies as documented in Plaintiff's medical records. *Id.* at pp. 3. Dr. Hollern's report seeks to offer testimony outside of his area of expertise including opining on neurological findings and causation as it relates to biomechanical forces, both of which are outside the scope of his expertise. As such, this testimony should be stricken and limited only to Plaintiff's orthopedic injuries.

## II.     RELEVANT LAW

Expert testimony is admissible from a qualified expert if it is relevant and reliable. FED. R. EVID. 702. Trial courts are to act as gatekeepers to ensure expert testimony is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 US. 137 (1999). This standard creates a three-part inquiry including: (1) whether the expert witness has the sufficient, specialized knowledge to render an opinion; (2) whether the expert witness' methodology is sufficiently reliable; and (3) whether the expert's opinion will assist the trier of fact. See i*d.*; *See FED. R. EVID. 702*. Each of these criteria should be considered separate and distinct from eachother and should not be

conflated. *United States v. Frazier*, 387 F.3d 1246, 1260 (11th Cir. 2004). When a party proffers the testimony of an expert witness under Rule 702 of the Federal Rules of Evidence, that party **bears the burden of laying the proper foundation**, and that party must demonstrate admissibility by a preponderance of the evidence. See *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291–92 (11th Cir.2005) (*emphasis added*); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). The Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *Frazier*, 387 F.3d at 1260. While some overlap exists among these requirements, it is the court that must individually and separately analyze each concept. See *Id*. If a proffered expert witness meets all three criteria, the expert is provided wide latitude to offer opinions, "including those that are not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 592 (1993). The proponent of the expert witness bears the burden of establishing the admissibility of the expert witness's testimony under Rule 702. *Rink*, 400 F.3d at 1291.

## Reliability Test

When determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." *Frazier*, 387 F.3d at 1261 (internal formatting, quotation, and citation omitted). To make this determination, the district court examines: "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Id.* at 1260 (citing *Quiet Tech. DC – 8, Inc. v. Hurel – Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir.2003)). "The same criteria which are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Thus,

4

the aforementioned factors are non-exhaustive, and the Eleventh Circuit has emphasized that alternative questions may be more probative in the context of determining reliability. See *Id.*

"[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005). A "fit" must exist between the offered opinion and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir.2004) (citing *Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made between the facts and the opinion." *Id.* (citing *General Electric Co. v. Joiner*, 522 U.S. 136 (1997)). Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341. Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

## III.    ANALYSIS

Plaintiff, under Federal Rule of Evidence 702 and the *Daubert* standard, moves to exclude Dr. Courtney, and Dr. Hollern from offering their opinions in this matter at trial. As such, Plaintiff respectfully requests the Court grants its Omnibus *Daubert* Motion as further indicated below. It is further well settled that "even if a witness is qualified as an expert regarding a particular issue, the process used by the witness in forming his opinion must be sufficiently reliable under Daubert and its progeny. *Eberli v. Cirrius Design Corp.*, 615 F.2d 1357 (S.D. Fla. 2009). *See also McCorvey v. Backster Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002).

### A. Dr. Courtney's testimony is predicated on unreliable methodology

In rendering the opinions found with the Expert Report of Dr. Courtney (Exhibit "A"), Dr. Courtney relies on the inspection photographs and findings created during an "inspection" of

*exemplar* tables, chairs, and trolley on the Carnival Elation in Port Jacksonville, Florida, on January 20, 2024. See *Expert Report of Dr. Courtney*, Exhibit "A" at pp. 3. During her inspection of the exemplar furniture, she notes that the exemplar chair was weighed using "a digital ***luggage scale*** indicated a weight of *approximately* 15.6 pounds" and "[t]he height of the back of the chair was *approximately* 38 inches, and the seat height was *approximately* 17 inches." *Id.* (*emphasis added*). Dr. Courtney further notes that there are "various references to a 'stack' of chairs and tables on a trolley[,]" but notes that there were "**no specific descriptions, photographs, or demonstrations of this arrangement**." *Id.* at pp. 11. (*emphasis added*). In fact, in discovery no photographs of the stack or video of the incident including chairs and/or trolley were produced. Additionally, no policies, procedures, or demonstrative materials were produced responsive to discovery, Plaintiff's Schedule "B" of the Notice of Deposition of Carnival's Corporate Representative and was not testified to in the Rule 30(b)(6) deposition.

Thereafter, without any explanation or discussion of the methodologies or alternatives considered, Dr. Courtney concludes that "[t]he only arrangement that ***made sense*** and that was ***somewhat stable*** involved a set of four chairs and two tables." *Id.* (*emphasis added*). This arrangement directly contradicts the testimony of David Budi Raharjo, the housekeeping attendant responsible for pushing the trolley and chairs during the incident, who testified there were "five or six chairs" on the trolley, as explicitly stated in Dr. Courtney's report. *Id.* at pp. 6. Dr. Courtney continues that "[b]ased on my inspection, the orientation of the 'stack' . . . was likely with the back of the upside-down chair closest to the back of Ms. Terry's chair. Otherwise, the falling lower chair would have contacted only the back of her chair and not her head." *Id.* at pp. 11-12.

As a threshold issue, Dr. Courtney fails to describe in her methodology how she rules out any other alternative method of stacking the chairs and fails to explain the differential in the

number of chairs as testified to by David Budi Raharjo- the crewmember responsible for this incident. She even describes her "stack" throughout her report using quotations as if to call into question the legitimacy of her prescribed method of stacking the exemplar chairs. *Id.* at pp. 11 and 12. She further describes her "most likely orientation" as "somewhat stable" calling into questions whether this is even the best method – let alone the factually correct way the chairs were stacked on the date of the incident. Based on her report, she does not claim to have interviewed David Budi Raharjo or any other Carnival Crewmember/Employee to gain the requisite knowledge to derive these facts and conclusions found in her report. Therefore, Dr. Courtney's methodology for "tip-over testing" is flawed as not only did she use "exemplar" chairs, but also used an arrangement that she unilaterally created for her testing, not based upon the actual testimony, facts available and, at least in part, contradictory to the testimony of those involved in the incident. *Id.* at pp. 12.

The court's gatekeeper function in assessing the admissibility of expert testimony requires a three (3) prong test. *Kumho Tire Co., Ltd.,* 526 US. 137. **First**, the testimony is based upon **sufficient facts or data.** *Id.* **Next**, the testimony is the product of reliable principles and methods; and **finally**, the witness has applied the principles and methods reliably so that the expert's opinion will assist the trier of fact. *Id.* (*emphasis added*). First, Dr. Courtney's analysis is based upon insufficient facts and data that is not supported by the report and the proffered testimony. As stated above, the evidence, including testimony, demonstrates that there were "five or six chairs" and **no mention of tables**. See *Dr. Courtney's Expert Report,* at pp. 11. Moreover, the manufacturer's specifications, produced by the Defendant, regarding those five or six chairs are different from the specifications Dr. Courtney provides in her report. *Id.* at pp. 10. See *Kannoa Marbella*, "Dining Chair with Arms", attached as Exhibit "C". The *Kannoa Marbella*, "Dining Chair with Arms", specifications states that the weight of the subject chair(s) was 20 pounds; the chair(s)'s height was

40 inches; and the chair(s)'s seat height was 18 inches. *Id.* In Discovery, Carnival provided no other similar specifications sheets for other furniture such as tables. Therefore, Dr. Courtney's measurements of the *exemplar* chairs are significantly different from the manufacturer's specifications including Dr. Courtney's listed Seat Chair Height being 1 inch shorter; Dr. Courtney's overall Chair Height being 2 inches shorter, and Dr. Courtney's Chair Weight being 4.4 pounds lighter. These facts alone, and the contradiction in the manufacturer's documents produced by Carnival during discovery raises significant questions as to whether Dr. Courtney evaluated the appropriate and/or substantially the same chairs, despite continued reference to them throughout her report as "exemplar" chairs.

Again, much like her flawed methodology for configuring the so-called "stack" Dr. Courtney's report offers no explanations to these highly contradictory measurements. Surprisingly, all of Dr. Courtney's measurements are smaller or reduced from what is plainly stated on the *only* reliable evidence produced about the subject chairs. Thus, the reliability of the facts and data used by Dr. Courtney in reaching her expert opinions are highly flawed and unreliable.

As such, given the unreliable data being used and the flawed principles and methods, if any, that are demonstrated in determining the number and content of the so-called "stack" used within Dr. Courtney's report, her opinions will only stand to confuse the trier of fact and is a blatant attempt to interject the exemplar photographs and her view of the stack, its configuration, and makeup, as actual evidence of the configuration used on the date of the subject incident. "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained." *Id.* (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005)). Furthermore, given the inconsistencies in the chair specifications, number of chairs, and inclusion of unsubstantiated tables, and the lack of

methodology used to determine the alleged chair arrangement, Dr. Courtney's proffered testimony and resultant mathematical calculations are  flawed and cannot be corrected.

During Dr. Courtney's so-called testing, she states that "[t]hree trials were completed. In each trial, the top chair on a 'stack' was **_gently pushed_** from the far side, toward the chair on the deck, until it became unbalanced and continued to fall due to gravity." *See Dr. Courtney's Expert Report* at pp. 12. Dr. Courtney offers no evidence from any testimony or video recordings that the chairs were gently pushed causing them to fall. Instead, Dr. Courtney's report states that the chairs fell after "Mr. Raharjo tore through the plastic wrap using his hands and started taking off the chairs one by one." *Id.* at pp. 6. Dr. Courtney's report measures the alleged force to "be a range of 3.32 pound to 8.44 pounds." *Id.* at 12. However, this is based on the flawed weight calculated by Dr. Courtney's luggage scale and not from record evidence- the manufacturer's specifications. Similarly, the number of chairs in the stack and the configuration are unsupported, and therefore produce similar fatal flaws. The same incorrect and unsupported measurements from the "exemplar" furniture and the only stack that "made sense" was used by Dr. Courtney when deriving the calculations of the chair's velocity (and failing to consider height variations) using the "publicly accessible and widely used physics-based software." *Id.* at 13.

Therefore, Dr. Courtney's conclusion that "[t]he part of the rotating chair with the highest linear velocity at the moment of contact was moving at less than 3.9 feet per second" is based on inaccurate measures, flawed assumptions, and only seeks to interject the proffered photographs of an alleged "stack" that is not supported by the evidence. For these reasons, Dr. Courtney's report is nothing other than her own observations and opinions. As such, these highly subjective findings and results belie her opinions. *See Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1313-17 (11th Cir. 1999) (experts testimony based upon peer review study was properly excluded due to

the expert's inability to explain the correlation between the results and the case at hand.). Therefore, her report and expert testimony must be stricken as it is not reliable and lacks the factual underpinning required under *Daubert* and Rule 702. In the alternative, at the very least, Dr. Courtney's photographs of the "inspection" and calculations based on faulty conclusions should be stricken and should not be permitted during her trial testimony or submitted to the trier of fact.

**B.  Dr. Courtney's Report includes personal opinions that will not assist the trier of fact**

"The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Frazier,* 387 F.3d at 1260 (citing Daubert, 509 U.S. at 597). Carnival bears the burden of satisfying all of the elements including its proffered expert's qualifications, reliability, and helpfulness, and based upon the above analysis, Carnival cannot meet its burden. See FED. R. EVID. 702. A court may reasonably conclude that there is simply too great an "analytical leap" between the data and the opinion proffered. Opinions regarding credibility, truthfulness and effort are inadmissible and should be stricken. This would include Dr. Courtney's testimony regarding the biomechanics of the falling chair from a unilaterally and unsupported by the evidence created stack and subsequent injury. Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. *See United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985) (expert testimony admissible if it offers something "beyond the understanding and experience of the average citizen"); *Frazier*, 387 F.3d at 1262.

During her inspection of the subject area, Dr. Courtney's report elicited the following comments: (1) "[t]here were various references ... to a 'stack' of chairs and tables..."; (2) "...to form two 'stack'..."; (3) "...the 'stack' of tables and chairs was reported to be wrapped in plastic...", (4) "...the height from the deck of each 'stack' was approximately 61 inches..."; (5) "...the orientation of the 'stack' involved in the subject incident..."; (6) "...chair falling from the top of the 'stack'..."; (7) "...between her chair and the 'stack' on the trolley..."; (8) "If the 'stack' was closer..."; (9) "If

10

the 'stack' was farther..."; (10) "...the top chair on a 'stack,'..."; (11) "...the 'stack' also tipped over..."; and (12) "...the 'stack' did not completely separate ... ". *See Courtney's Report* at pp. 11-12. Dr. Courtney's consistent use of quotes seems to raise an inference that she questions the veracity and credibility of her unilaterally selected arrangement of chairs and whether this "stack" is the same as it occurred during the incident. As such, this a blatant example of improper opinion testimony and professional speculation. These statements are inappropriate for testimony from an expert and do not assist the trier of fact. Despite the use of quotes, and her commentary regarding the speculative stability of her unilaterally and evidentially contradictory chosen stack, Dr. Courtney fails to provide sufficient factual support for her opinions. These remarks are hypothetical and without proper evidentiary or expert foundation and are in violation of Rule 702.

Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, *See Rouco*, 765 F.2d at 995, or if the expert testimony is cumulative or needlessly time consuming. *See e.g.*, *Hull v. Merck & Co., Inc.*, 758 F.2d 1474, 1477 (11th Cir. 1985) (per curium) (finding that admission of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed. R. Evid. 702"). Here, Dr. Courtney's report and testimony would only serve to confuse or mislead the jury, as her calculations are based on flawed assumptions and unreliable methodology. Moreover, as there is no video or photographic evidence of the incident or any evidence regarding the arrangement or number of chairs, Dr. Courtney's pictures stand to mislead the jury because they unilaterally create the appearance of evidence regarding the arrangement of chairs, even though testimony contradicts this said arrangement. Thus, not only will it mislead and confuse the jury, but it is also more prejudicial than probative-thus exclusion is also appropriate under FRE Rule 403.

Because juries often give much credence to an experts testimony and opinions, trial courts are cautioned to exclude such testimony when facts testified to are of a kind that do not require any specialized knowledge or experience to form a conclusion, or of such a character that they should be presumed to be within the common experience of all persons moving in the ordinary walks of life. *Frazier*, 387 F.3d at 1263 ( "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse."); *Whelan v. Royal Caribbean Cruises, Ltd.*, 976 F. Supp. 2d 1328, 1332 (S.D. Fla. 2013) (holding that Expert testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." ). Dr. Courtney has proffered testimony which goes well beyond expert testimony and seeks to inject her opinion regarding the subject incident. Dr. Courtney gives no factual support for these opinions. Her findings and her report are rife with commentary and personal opinions, suffer from highly speculative conclusions and are without foundation, are not within her expertise, and should be stricken, as they are in violation of Rule 702. Her report and testimony should be deemed inadmissible and improper testimony by an expert witness. In the alternative, at the very least, Dr. Courtney's photographs of the "inspection", conclusions reached from her inappropriate stack, its content and configuration, the number of chairs and the height of the chairs, should be stricken and should not be allowed during her trial testimony or submitted to the trier of fact.

## C. Dr. Courtney's opinion far exceeds her expertise

Dr. Courtney's expressed opinions clearly violate the required standards for expert testimony. Dr. Courtney holds herself out as an expert in injury biomechanics. *See Dr. Courtney's Report* at pp. 1. However, Dr. Courtney expresses opinions on the medical possibilities of injuries arising, medical matters outside her expertise as an engineer. *Id.* at pp. 15. For example, Dr.

12

Courtney states that the Plaintiff's spinal injuries are consistent with "age-related degeneration, repetitive loading over time, and the body's long-term response to alterations in vertebral stress distribution due to degenerative changes." *Id.* This is a medical opinion, not a biomechanical one. For Dr. Courtney to opine on the nature of the Plaintiff's injuries is out of the scope of her expertise. Many of her opinions are based upon outright assumptions, speculation and conjecture. Her opinions fail to meet *Daubert* standards. Dr. Courtney has not identified any background, training or experience in the fields of medicine for her to be able to draw such conclusions.

Accordingly, as pointed out by this Court in *In re Denture Cream Products Liability Litigation*, 795 F.Supp.2d 1345, 1350 (S.D. Fla. 2011):

> "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). "Rather, the trial court is free to 'conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Hendrix,* 609 F.3d at 1194 (citing *Joiner,* 522 U.S. at 146, 118 S.Ct. 512).

Dr. Courtney has failed to offer evidence that an expert in biomechanics is qualified to comment on the medical possibilities of the injuries sustained because of this incident. Dr. Courtney's contradictory opinions would not assist the trier of fact and instead confuse the jury. Accordingly, in the alternative, Dr. Courtney's testimony regarding the medical injuries suffered by Plaintiff should be stricken or at the very least limited to only her area of expertise in biomechanics.

**D.  Dr. Hollern's Report is beyond the scope of his area of expertise**

Dr. Hollern's opinions are well beyond the scope of his expert opinions, where Dr. Hollern discusses Plaintiff's traumatic brain injury (TBI). See generally *Dr. Hollern's Report*. Furthermore Dr. Hollern states that the mechanism of injury is unlikely to have caused cervical pathology and that there is no reason to assign disability from this "low-energy accident." *Id.* at pp. 3. Dr. Hollern continues to state that "[a]lthough the stacks of chairs fell on her, **it did not cause any type of catastrophic disc or spine injury** that would require any type of surgical

intervention." *Id.* at pp. 2. (*emphasis added*). Dr. Hollern makes this statement in a purely conclusory manner without providing any methodology for how he arrived at the conclusion. Dr. Hollern acknowledges that his testimony should be limited by his own words, stating that "[f]or this type of injury, she had an examination for an alleged traumatic brain injury which is **out of the scope of this specific CME**." *Id.* at pp. 3. (*emphasis added*). Dr. Hollern was not disclosed as a biomechanical or biomedical expert. Therefore, his opinions must be limited only to his area of expertise. He improperly states that "[h]owever, given **the mechanism of her incident**, it is unlikely that this caused her cervical pathology." *Id.* (*emphasis added*). As such, Dr. Hollern's statements regarding the mechanism of injury should be stricken. Furthermore, any reference to traumatic brain injury by Dr. Hollern should be excluded as it is outside his area of expertise, is prejudicial, and is not helpful to the jury. In sum, Dr. Hollern's testimony regarding biomechanics, biomedical conclusions, and Plaintiff's traumatic brain injury are improper and beyond his expertise.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant her *Daubert* Motion Regarding Dr. Courtney and Dr. Hollern in their entirety and preclude them from offering opinions at trial or, in the alternative, limit Dr. Courtney's testimony and Dr. Hollern's testimony, at trial to the parameters of their expertise as addressed more thoroughly above.

BY:    /s/ *Neil Gornto*_____
NEIL GORNTO, ESQ
Fla. Bar Number: 0020916
Attorney for Plaintiff

## LOCAL RULE 7.1. CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with counsel for Defendant in a good faith effort to resolve the issues herein. With regard to the other issues raised in the Motion, the Parties cannot agree and therefore are unable to resolve the issues.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 15, 2026, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

BY:       /s/ *Neil Gornto*
NEIL GORNTO, ESQ
Fla. Bar Number:
0020916
Attorney for Plaintiff

## SERVICE LIST
### Case No.: 24-CV-22067-ALTMAN

**GLENN J. HOLZBERG, ESQ.**
Florida Bar No: 369551
glenn@holzberglegal.com
erika@holzberglegal.com
**LOUIS M. HOLZBERG, ESQ.**
Florida Bar No: 1011340
Louis.holzbery@forthepeople.com
Morgan & Morgan
703 Waterford Way, Ste #1000
Miami, FL 33126
Telephone: (305) 929-1900
**FRANK FRATELLO JR, ESQ.**
Florida Bar No: 046100
ffratello@farahandfarah.com
cdavis@farahandfarah.com
*Attorneys for Plaintiff*

**Michael J. Drahos, ESQ.**
Florida Bar No. 0617059
*michael.drahos@gray-robinson.com*
**W. Cooper Jarnagin, ESQ**
Florida Bar No. 117767
*cooper.jarnagin@gray-robinson.com*
**Ashley Genoese, ESQ.**
Florida Bar No. 1019357
*ashley.genoese@gray-robinson.com*
**GrayRobinson, P.A.**
515 North Flagler Drive, Suite 650
West Palm Beach, Florida 33401
Telephone: (561) 268-5727
Facsimile: (561) 268-5745
*Attorneys for Defendant*