UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 24-22067-CIV-RKA

MICHELLE TERRY,                     .
                                    . Miami, Florida
            Plaintiff,              .
                                    . February 3, 2026
      v.                            . 2:08 p.m.
                                    .
CARNIVAL CORPORATION,               .
                                    .
            Defendant.              .
. . . . . . . . . . . . . . . . .

- - - - -

Transcript of Status Conference and Calendar Call

had before the Honorable Roy K. Altman,

United States District Judge.

- - - - -

Proceedings recorded by mechanical stenography, transcript
produced by computer.

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)301-3276

**EXHIBIT
A**

APPEARANCES:

For the Plaintiff:     Neil D. Gornto, Esq.
                       Woolsey Morcom
                       203 Fort Wade Road, Suite 105
                       Ponte Vedra, FL 32081
                                and
                       Howard K. Pita, Esq.
                       Pita Weber Del Prado
                       9350 S. Dixie Highway
                       Suite 1200
                       Miami, FL 33156

For the Defendant:     Michael J. Drahos, Esq.
                       Ashley Nicole Genoese, Esq.
                       Walter C. Jarnagin, Esq.
                       Gray Robinson
                       515 North Flagler Drive
                       Suite 650
                       West Palm Beach, FL 33401

Court Reporter:        Francine C. Salopek, RMR, CRR
                       Official Court Reporter
                       3010 NE 39th Street
                       Fort Lauderdale, Florida 33308
                       (305)301-3276

                            -   -   -   -   -

**TUESDAY, FEBRUARY 3, 2026, 2:08 P.M.**

*(The Court is already on the bench)*

THE COURT:  All right.  Well, then that gives us an opportunity to bring up Terry vs. Carnival.

Sicily, you can have that.

All right, Janier, go ahead and call the case.

ROOM CLERK:  Calling case 24-Civil-22067-Altman, Terry vs. Carnival Corporation.

Plaintiff, please state your appearance.

MR. PITA:  Skip Pita for Ms. Terry.

MR. GORNTO:  And Neil Gornto for Ms. Terry.

THE COURT:  All right.  Good afternoon.

MR. GORNTO:  Good afternoon, Your Honor.

MR. PITA:  Good afternoon, Judge.

MR. DRAHOS:  Good afternoon, Your Honor.  Michael Drahos from the law firm of Gray Robinson on behalf of the Defendant Carnival.  With me is my colleague, Cooper Jarnagin and Ashley Genoese.

THE COURT:  All right.  Good afternoon.

You all may be seated.

MR. DRAHOS:  Thank you.

THE COURT:  All right.  We have three motions before us today before we could do the calendar call.

First, a *Daubert* motion from the plaintiff; second, a motion to strike from the defendant; third, a motion in limine

from the defendant.  I'll address each motion in turn.

First, the plaintiff's motion to strike, which is at ECF Number 76.

Our plaintiff seeks to exclude testimony from two of the defendant's experts, Amy Courtney, a Ph.D., a biomechanical expert, expected to provide testimony on the biomechanics of the plaintiff's injuries; and, two, Douglas Hollern, an M.D., an orthopedic spine surgeon, expected to provide testimony on the plaintiff's injuries.  As we'll explain, I deny the motion in full and allow both experts to testify.

As to Dr. Courtney, the plaintiff contends that Dr. Courtney's report "uses inappropriate and unsupported methodology to reach her conclusions."  That's the *Daubert* motion at 2.  As the plaintiff sees it, Dr. Courtney "used an arrangement that she unilaterally created for her testing, not based upon the actual testimony, facts available, and which was, at least in part, contradictory to the testimony of those involved in the incident."  Page 7.

In the alternative, the plaintiff asks that we prevent Dr. Courtney from expressing opinions "on the medical possibilities of injuries arising, medical matters outside her expertise as an engineer."  That's the motion at page 12.

We see no reason to exclude Dr. Courtney's testimony.  As to methodology, the plaintiff's arguments go to the weight, not admissibility, of Dr. Courtney's report.  And any

discrepancies between that report and, say, testimony from a different witness presents issues that can be probed and should be probed on cross-examination. We understand you don't like it, and that you think that she's wrong, but that's what cross-examination is for.

"Vigorous cross-examination," our courts -- the Supreme Court of the United States has said, "the presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." That's from *Daubert* at 509 U.S. 579, page 596, a 1993 Supreme Court case.

And as to the question of medical opinions: The defendant maintains that "contrary to the plaintiff's assertions, Dr. Courtney is not offering any medical opinions" at all. That's the *Daubert* response at page 12. We'll accept that representation for now and allow Dr. Courtney to present biomedical data and testing that reflect that the incident alleged by the plaintiff would not provide a biomechanical mechanism sufficient to result in the brain and spine injuries alleged by the plaintiff. Again, that's from page 12 of the response. But we will not allow Dr. Courtney to offer medical opinions, you're right about that.

As to Dr. Hollern, the plaintiff argues that Dr. Hollern was "not disclosed as a biomechanical or biomedical expert" and therefore that "his opinions must be limited only

to his area of expertise." Page 14 of the *Daubert* motion. But the defendant responds by noting that the "defendant does not intend for Dr. Hollern to testify outside of his expertise, and this portion of the plaintiff's *Daubert* motion should therefore be denied as moot." That's Footnote 1 of the response.

Again, we'll accept that representation and allow Dr. Hollern's testimony so long as it remains limited to his area of expertise -- orthopedic spinal surgery -- and not biomechanics or biomedical conclusions of the traumatic brain injury.

And so because of all that, we'll allow vigorous cross-examination by the plaintiff of both experts, but we find that their testimony meets the methodological and factual bases required by *Daubert*, and that as a result, their testimony should be allowed, and that the objections really go to the weight, not the admissibility of that evidence.

Motion at ECF Number 76 is denied.

The second motion is at ECF Number 94. That's the motion to strike. This is the defendant's motion to strike.

The defendant seeks to prevent Dr. Darren Buono, a radiologist, from serving as a witness and offering testimony at trial. As the defendant explains, the plaintiff "failed to disclose Dr. Buono in any respect, including as a witness or individual likely to have discoverable information" at any point throughout the discovery. That's the motion at page 4.

During the parties' pretrial conference on January the 23rd, 2026, the plaintiff first revealed that she was intending to offer the testimony and opinion of Dr. Buono at trial. That's page 5. The defendant argues that this untimely disclosure was neither justified nor harmless and so cannot be excused.

Our plaintiff responds by advancing two arguments.

First, that there's no surprise because Dr. Buono is a treating radiologist, not a retained expert. And because the plaintiff's amended initial disclosures that were timely served in October 2025 listed the Radiology Associates of Orange Park where Dr. Buono works. That's the response at page 2.

Second, that the disclosure is merely the result of "excusable neglect resulting in no harm," because "Carnival retains the right to cross-examine Dr. Buono and -- having had knowledge of these x-rays for some considerable period before discovery was closed -- to have retained any radiologist of its own choosing to give defendant's own rendition of what the x-rays show or don't show." That's pages 1 and 5 of the response.

I'm not persuaded by the plaintiff's arguments. For one, we find it difficult to accept the theory that the defendant should have gleaned from earlier filings that Dr. Buono would be serving as a witness at trial. The Eleventh Circuit has repeatedly rejected the proposition that a party

should have "to assume that every doctor mentioned in medical records will be called to testify at trial."  That's from *Scott vs. Carnival*, 2025 WL 2402001, at page 5, a 2025 case. "It's one thing," the Court has said, "for Carnival to use information from the records in the plaintiff's deposition; it's another thing to depose every single doctor mentioned, without any summary of what his or her opinion would be." That's also from page 5 of that decision.

What's more, the plaintiff hasn't offered a compelling explanation to us for why she could not have timely disclosed her intention to use Dr. Buono as a witness.  Indeed, she appears to contest whether the disclosure was even untimely in the first instance, arguing "that the 'late' disclosure" -- she puts "late" in quotation marks -- "was, at best, inadvertent and causes no harm."  That's the response at page 4.  I don't see how that's possible.

Federal Rule of Civil Procedure 26 prescribes the time and method of disclosure that's required in district court. That's from *Rigby vs. Philip Morris*, 717 F.App'x 834, at 835, an Eleventh Circuit case from 2017.  And Rule 37 provides that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness unless the failure was substantially justified or harmless."  That's Rule 37(c)(1).

Here, we find that the untimely disclosure was not

substantially justified.  In fact, I've gotten no excuse for it at all.  And we also find that it was deeply harmful to the defendant, as it deprived, obviously, the defendant of having any meaningful opportunity to properly prepare a counterresponse or to propound appropriate discovery as to Dr. Buono or third parties dealing with Dr. Buono, all things the defendant no doubt would have done had it received this information in a timely fashion.

We, therefore, grant the defendant's motion to strike and exclude Dr. Buono's testimony from the trial.

Finally, there's the defendant's motion in limine at ECF Number 77, which objects to the fact that "after the relevant discovery and disclosure deadlines, the plaintiff disclosed two new courses of treatment:  One, counselor therapy sessions by a new provider; and, two, drug trials and an eventual surgical implant of a fentanyl delivery device performed by a new doctor," that is Dr. Kenneth Eaddy.  That's the defendant's reply at ECF Number 96.

As we've noted, discovery closed in this case in February of 2025.  My scheduling order is at ECF Number 15.  But beginning in September of 2025, which is over seven months later, the defendant tells us, "the plaintiff began supplementing her discovery responses" with "new disclosures that indicated the plaintiff had attended multiple therapy sessions with a 'behavior analyst' and continued treating with

pain management physicians."  That's the motion in limine at page 2.  In November and December of 2025, the plaintiff "produced documents indicating she had undergone multiple clinical trials for intrathecal drug delivery."  Also page 2 of the motion.

The defendant says that "we should preclude medical treatment and bills disclosed past the February '25 discovery date, given that the plaintiff never moved for an enlargement of time based on ongoing treatment and never moved to reopen discovery or modify the scheduling order to disclose experts in support of this medical treatment."  The motion in limine at page 3.

Otherwise, the defendant insists, it will be "unfairly prejudiced because, one, it has no therapist expert to rebut any claim of the need for the therapy disclosed; two, no pain management expert to rebut the need for installation of an intrathecal drug delivery device; and, three, no mechanism to challenge through discovery the reasonableness of the hundreds of thousands of dollars in letters of protection that have amassed since the discovery cutoff date."  That's all from page 3.  Plus, the defendant adds, "compulsory medical examinations of the plaintiff by defendant's experts all predate plaintiff's post-discovery medical care."  Also page 3.

The plaintiff again responds with two arguments.

First, that there's no prejudice here, because "the

defendant has now delayed four months since it first became aware of the information contained in the plaintiff's supplements and could have moved for an extension of time to undertake its own further discovery."  That's the response at page 4.

Second, that there's no "failure to disclose" because the plaintiff "was unable to disclose events that had not yet occurred prior to the discovery deadline," as there's no stopwatch which shuts off a patient's recovery because of a court-imposed deadline.  Also page 4.

The defendant points out in its reply that the plaintiff disclosed Dr. Eaddy as a trial witness who will testify as to "pain management -- damages, causation, permanency, and future medical care."  That's the witness list at ECF Number 79.

The reply thus asks that we also prohibit the plaintiff from introducing at trial "a brand new doctor as an expert witness along with brand new medical treatment following the expiration of the Court's deadline."  Reply at page 2.

As we've discussed, "compliance with the requirements of Rule 26 is not aspirational," and that's because discovery rules "allow both sides in a case to prepare their cases adequately and to prevent surprise."  That's from *Reese vs. Herbert*, 527 F.3d 1253, at 1266, an Eleventh Circuit case from 2008.

The only exception to this rule, as we've said, is when the party can establish that the untimely disclosure was "substantially justified or is harmless" under Rule 37(c)(1). In weighing those factors, we consider, "one, the importance of the testimony; two, the explanation for the failure to disclose; and, three, the prejudice to the opposing party if the witness had been allowed to testify."  That's from *Romero vs. Drummond*, 552 F.3d 1303, at 1321, an Eleventh Circuit case from 2008.  The Eleventh Circuit has made clear, however, that the first factor is less important than the other two combined.  That's from *Scott*, 2025 WL 2402001 at page 4.

Here, even if I assume that the evidence is important -- and I will give the plaintiff that, they say so in their response at pages 4 through 5 -- the second and third factors, the lack of any viable explanation for why this occurred without a request for an enlargement of time, and the prejudice to the defendant, which would be enormous, having an entirely new expert they couldn't depose or as to whom they could not propound discovery, and an entirely new set of treatments that resulted in hundreds of thousands of dollars of extra damages, given how much the defendant would be prejudiced, and the lack of any viable explanation, those two combine to outweigh the much less important first factor, which is the importance of the material to the plaintiff.

We therefore agree with the defendant that it "could

FRANCINE C. SALOPEK, OFFICIAL COURT REPORTER
(305)301-3276

not have anticipated an entirely new surgery by a new provider along with a roughly half-million-dollar increase in her claim for past medical damages."  That's the reply at page 2.

And I just don't understand why the plaintiff couldn't have said, "Here's some new discovery, here's a new treatment. Judge, let's come in for a hearing."  You know that I have you all in every month for these palooza hearings.  "Let me come into your next palooza hearing, let me ask you for 30 more days of extra discovery," which I would always grant, so that they can propound their own discovery and their own questions of your new witnesses and your new damages model, and hire their new expert.  That was never done in this case.  It should have been done.  It's not the burden of the defense to comply with the plaintiff's discovery obligations; it's the plaintiff's burden to comply with its own discovery obligations.

"Rule 37 certainly permits a district court to exclude a witness based on a party's noncompliance with Rule 26," as "district courts are entitled to broad discretion in managing their (sic) pretrial discovery matters."  That's from *Long vs. East Coast Waffles*, 762 F.App'x. 869, at 871, an Eleventh Circuit case from 2019.

Given the tremendous unfairness of the way this evidence was disclosed to the defendant late in the game and after the close of all discovery, we exercise our discretion here and exclude the untimely disclosures and the materials and

witnesses at issue. We therefore grant the defendant's motion in limine, at ECF Number 77.

Are there other motions I need to address before we get to the calendar call? From the plaintiff?

MR. PITA: No, Judge.

THE COURT: From the defense?

MR. DRAHOS: No, Your Honor.

THE COURT: All right.

So you heard the calendar call. It's a civil case. So we're probably going to bring in fewer -- I usually bring in 25 for a civil case. You get three peremptories each side. I'll bring in 25. There's only five phases of jury selection for a civil case. They'll get the questionnaire, same as the other lawyers did.

Did you get yours yet?

MR. PITA: I don't think we did, Judge.

THE COURT: Okay. I'll probably send it to you today or tomorrow, and then you'll look it over. It's one page both sides. My wife is an environmentalist, so you know I could have printed it on two sides. But if you look at it and you have objections to it, you just reach out to Janier and let me know. But you won't have objections to it, because I've thought long and hard about it, and you want to make me happy. But seriously, if you have anything you disagree with, you let me know. It's simple, like where do you live, where your kids

go to college, like that kind of thing.

We'll bring the jurors in, they'll fill out the questionnaires, you'll get them when I get them, you start to read them, the jurors will come up ten or 15 minutes later. We'll have six seats in the front. The first six jurors will be in there, 7 through 13 will be in the first row, 14 through 23 will be in the back row. And there will be two stray jurors right behind plaintiff's table.

And we'll do the five phases that I described before. I can repeat them to you if you like. The only difference is, of course, we don't have Phase III in a civil case, which is the three fundamental rules of our American criminal justice system. So we have the five phases.

For the last phase, we will let them go, you'll pick them the way I described. We'll start with the plaintiff, Ms. Jones, yes or no, then we'll go over to the defense, and we'll go back and forth until we have eight. So we'll pick eight jurors, not six, and there's no backstriking and no extra strikes. Okay?

Any questions about that from the plaintiff?

MR. PITA: No questions, Judge.

THE COURT: From the defense?

MR. DRAHOS: No, Your Honor.

THE COURT: All right. So just -- is there anything else I can help you with before we break? From the plaintiff?

MR. PITA:  No, Your Honor.

THE COURT:  You guys are easy, not like real civil lawyers.  You guys are nice.

Okay.  What about you?  Anything I can help you with?

MR. DRAHOS:  No, Your Honor.

THE COURT:  Okay.  Why don't you hang out in the back while we bring in the last case, and then I can play the Jenga of which case is going to go first.

Any preference, by the way -- first week, second week -- from you guys?

You don't care.

MR. PITA:  It doesn't matter.

THE COURT:  You guys are easy.  If you guys are this friendly, how come you couldn't settle your case?

MR. PITA:  We're trying.  We're trying.

THE COURT:  You're trying.

MR. PITA:  You may have helped today.  Who knows?

THE COURT:  Whew.  You know what?  Instead of waiting in the courtroom and wasting time, why don't you go into the attorney room and see if you can work this thing out.

MR. DRAHOS:  Thank you.  We will.

THE COURT:  All right?  Take 15 minutes.

*(Recess taken in this case at 2:28 p.m. until 2:57 p.m.)*

THE COURT:  All right.  Let's bring the civil lawyers out.

(Judge speaking Spanish)

(The civil lawyers entered the courtroom)

THE COURT:  All right.  Calling Terry vs. Carnival back.  We've got the plaintiff's lawyers and the defendant's lawyers.

Where are we?

MR. PITA:  Judge, there are ongoing negotiations happening.  Right?  The -- Carnival did make a counter today, so we got to digest that, what we got --

THE COURT:  And it's a good one?

MR. PITA:  -- put pencil to paper.  I think any movement is good.  Any movement is good in my opinion.

There's something I wanted to clarify, that we have two treating physicians, Judge, that we would like to have appear by Zoom.  It's my understanding -- I just got involved in the case a couple weeks ago, but it's my understanding that you had made previous statements that Zoom would be okay.

THE COURT:  I don't mind it.  If the parties are okay with it, I don't have a problem with it.  I mean, I prefer to have them in person, but I get why if you're a treating physician you got work and you got to be at the hospital.

MR. PITA:  These are treating physicians in Jacksonville.

THE COURT:  Okay.

MR. PITA:  Ms. Terry is from Jacksonville.  So one of them -- they both have active --

THE COURT:  I don't have a problem with it.

MR. PITA:  No problem with the Zoom?

THE COURT:  I mean, you have a problem with it?

MR. DRAHOS:  Well, Your Honor --

THE COURT:  We do this routinely.

MR. DRAHOS:  Yeah, so --

THE COURT:  I wouldn't allow it in a criminal case, let's be clear, but in a civil case, I allow it regularly.

MR. DRAHOS:  Okay.  In light of the Court's guidance in that regard, we're not going to cause a fuss over that.  We'll have one witness that we likely will call by Zoom.

THE COURT:  Perfect.  That's fine.  You just have to be -- you know, you have to be slow and you got to -- it's harder to do, but we can accommodate it.

MR. DRAHOS:  Okay.

MR. PITA:  Using these televisions, Judge?

THE COURT:  No.  No.  Those televisions are for the good people of the United States who sit in the back.  It will be using a camera that is -- there's one camera that will face the courtroom from where the courtroom deputy sits, and then the witness will appear in the screen that's in front of you right there.  Do you see it?

MR. PITA:  Yes.

THE COURT:  Yeah.

MR. PITA:  So do we need to bring any audio-visual equipment for this?

THE COURT:  Well, you need to bring your computer -- I mean this is, let me tell you, not my expertise, okay?  But you need to bring your computer and talk to Fran and Janier about how to work this out.  But there's -- there are ways, there are magic ways.  I just don't know them.

MR. PITA:  Sometimes, you know, we bring in an audio-visual team with a screen.

THE COURT:  You probably should do that if you -- I mean, I would bring in somebody who has an expertise and who cares about you.  I'm not saying we don't care about you, but we got other things to care about, you know?

MR. DRAHOS:  We got to file a motion.

THE COURT:  Yeah, remember, you have to file a motion any time you want to bring in electronic equipment to the courtroom in order to get it through the marshals downstairs.  And I have to sign it within a day of -- you know, before you come in.  Same for both sides.

MR. DRAHOS:  Your Honor, on that note, we do have our equipment here.  If the Court will allow, we would welcome an opportunity to just test our connections.

THE COURT:  That's fine with me.  I don't mind that.

20

MR. DRAHOS:  Okay.  Thank you.  We won't obviously disrupt --

THE COURT:  You can't leave it.

MR. DRAHOS:  No.  Just wanted to test it while we're here.

THE COURT:  Okay.  So where are we with Mr. Albeja?

THE MARSHAL:  He should be here within the next two minutes, Your Honor.

THE COURT:  Two minutes, okay.

*(Pause)*

ROOM CLERK:  Are we done with the civil case?

THE COURT:  Not yet.

So let's plan on you guys following the two criminal cases, okay?  So if anything changes, if one of them goes away, Janier will call you this week.

But for now, the smaller criminal case will start on Monday.  We'll plan on trying that case Monday, Tuesday, and maybe Wednesday.  And the second criminal case, the longer one, will start on Wednesday, and we'll go until it's finished, and then you will go after that.  Okay?  Does that make sense?

MR. PITA:  Is it a two-week calendar?

THE COURT:  It's a two-week calendar, so you may either be on the second -- remember, these things -- sometimes people plead guilty, sometimes these cases go away for other reasons.  So you got to be on for this two-week calendar.  If

it doesn't go in this two-week calendar, we'll just move it to the next two-week calendar.  Okay?

MR. PITA:  Yes.

THE COURT:  Understood?

MR. DRAHOS:  Yes, Your Honor.  Having heard the Court's comments previously, it doesn't sound like there's any chance we would start on Monday, or should we be --

THE COURT:  This Monday?

MR. DRAHOS:  The following Monday, yeah.

THE COURT:  It depends.  I mean there's two cases in front of you.

MR. DRAHOS:  Right.

THE COURT:  So the one shorter criminal case is going to go first and see if we can get that out of the way.  And then the second criminal case will start depending on what happens now when they bring the defendant.  If you want, you can wait around and see what happens in the next 20 minutes or so.

MR. DRAHOS:  If it's all right with the Court, yes.

THE COURT:  Yeah, I don't have a problem.

MR. DRAHOS:  Thank you.

THE COURT:  All right.  Anything else from the plaintiff?

MR. PITA:  Nothing, Judge.

THE COURT:  From the defense?

MR. DRAHOS:  No, Your Honor.

THE COURT:  Okay.  How long is it going to be?

MR. PITA:  Five days?

THE COURT:  Five days total?

MR. PITA:  As we approximate.

THE COURT:  Five days total or each side?

MR. PITA:  Total.

MR. DRAHOS:  Five days total.

THE COURT:  All right.  You guys can hang out.

MR. DRAHOS:  Thank you.

*(Proceedings concluded at 3:04 p.m.)*

- - - - -

C E R T I F I C A T E

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript from the record of proceedings in the above-entitled matter.

_____/s/Francine C. Salopek_____     _2-4-2026____
Francine C. Salopek, RMR-CRR                Date
Official Court Reporter

MR. DRAHOS: [22]
MR. GORNTO: [2]  3/11 3/13
MR. PITA: [24]
ROOM CLERK: [2]  3/7 20/11
THE COURT: [47]
THE MARSHAL: [1]  20/7

**'**

'25 [1]  10/7
'behavior [1]  9/25
'late' [1]  8/13

**/**

/s/Francine [1]  22/23

**1**

105 [1]  2/3
12 [3]  4/22 5/15 5/20
1200 [1]  2/6
1253 [1]  11/24
1266 [1]  11/24
13 [1]  15/6
1303 [1]  12/8
1321 [1]  12/8
14 [2]  6/1 15/6
15 [1]  9/20
15 minutes [2]  15/4 16/22
1993 [1]  5/11

**2**

2-4-2026 [1]  22/23
20 minutes [1]  21/17
2008 [2]  11/25 12/9
2017 [1]  8/20
2019 [1]  13/21
2025 [5]
2025 WL 2402001 [2]  8/3 12/11
2026 [4]  1/7 3/1 7/2 22/23
203 [1]  2/3
23 [1]  15/7
23rd [1]  7/2
24-22067-CIV-RKA [1]  1/4
24-Civil-22067-Altman [1]  3/7
2402001 [2]  8/3 12/11
25 [2]  14/11 14/12
26 [4]  8/17 8/22 11/21 13/17
28 [1]  22/20
2:08 [2]  1/7 3/1
2:28 [1]  16/23
2:57 [1]  16/23

**3**

30 [1]  13/8
301-3276 [1]  2/13
3010 [1]  2/12
305 [1]  2/13
32081 [1]  2/3
3276 [1]  2/13
33156 [1]  2/6
33308 [1]  2/13
33401 [1]  2/10
37 [4]  8/20 8/24 12/3 13/16

**39th [1]**  2/12
**3:04 [1]**  22/11

**5**

509 U.S. 579 [1]  5/11
515 [1]  2/9
527 F.3d 1253 [1]  11/24
552 F.3d 1303 [1]  12/8
579 [1]  5/11
596 [1]  5/11

**6**

650 [1]  2/10

**7**

717 F.App'x 834 [1]  8/19
753 [1]  22/19
76 [2]  4/3 6/17
762 F.App'x. 869 [1]  13/20
77 [2]  9/12 14/2
79 [1]  11/15

**8**

834 [1]  8/19
835 [1]  8/19
869 [1]  13/20
871 [1]  13/20

**9**

9350 [1]  2/5
94 [1]  6/18
96 [1]  9/18

**A**

above [1]  22/22
above-entitled [1]  22/22
accept [3]  5/15 6/6 7/22
accommodate [1]  18/17
address [2]  4/1 14/3
adds [1]  10/21
adequately [1]  11/23
admissibility [2]  4/25 6/16
admissible [1]  5/10
advancing [1]  7/7
afternoon [5]
agree [1]  12/25
Albeja [1]  20/6
alleged [2]  5/18 5/20
allow [9]
allowed [3]  6/15 8/22 12/7
alternative [1]  4/19
Altman [2]  1/14 3/7
amassed [1]  10/20
amended [1]  7/10
American [1]  15/12
Amy [1]  4/5
analyst' [1]  9/25
anticipated [1]  13/1
appearance [1]  3/9
APPEARANCES [1]  2/1
approximate [1]  22/5
area [2]  6/1 6/8
argues [2]  5/23 7/4

arguing [1]  8/13
arguments [4]  4/24 7/7 7/21 10/24
arising [1]  4/21
arrangement [1]  4/15
Ashley [2]  2/8 3/18
aspirational [1]  11/21
assertions [1]  5/14
Associates [1]  7/11
assume [2]  8/1 12/12
attacking [1]  5/9
attended [1]  9/24
attorney [1]  16/20
audio [2]  19/3 19/11
audio-visual [2]  19/3 19/11
aware [1]  11/2

**B**

backstriking [1]  15/18
bases [1]  6/13
Beach [1]  2/10
began [1]  9/22
beginning [1]  9/21
behind [1]  15/8
bench [1]  3/2
bills [1]  10/7
biomechanical [3]  4/5 5/18 5/24
biomechanics [2]  4/6 6/9
biomedical [3]  5/17 5/24 6/9
brain [2]  5/19 6/9
brand [2]  11/17 11/18
break [1]  15/25
broad [1]  13/18
Buono [10]
Buono's [1]  9/10
burden [3]  5/8 13/13 13/15

**C**

calendar [9]
call [7]
called [1]  8/2
Calling [2]  3/7 17/5
camera [2]  18/22 18/22
careful [1]  5/8
CARNIVAL [9]
causation [1]  11/13
cause [1]  18/13
causes [1]  8/15
certify [1]  22/19
challenge [1]  10/18
chance [1]  21/7
choosing [1]  7/18
Circuit [6]
CIV [1]  1/4
civil [11]
claim [2]  10/15 13/2
clarify [1]  17/15
clear [2]  12/9 18/11
clinical [1]  10/4
close [1]  13/24
closed [2]  7/17 9/19
Coast [1]  13/20
Code [1]  22/20
colleague [1]  3/17

## C

college [1] 15/1
combine [1] 12/23
combined [1] 12/11
comments [1] 21/6
compelling [1] 8/9
compliance [1] 11/20
comply [2] 13/13 13/15
compulsory [1] 10/21
computer [3] 1/22 19/5 19/7
concluded [1] 22/11
conclusions [2] 4/13 6/9
conference [2] 1/13 7/1
connections [1] 19/24
considerable [1] 7/16
contained [1] 11/2
contends [1] 4/11
contest [1] 8/12
continued [1] 9/25
contradictory [1] 4/17
contrary [2] 5/8 5/13
Cooper [1] 3/17
CORPORATION [2] 1/8 3/8
counselor [1] 9/14
counter [1] 17/10
counterresponse [1] 9/5
court [13]
Court's [3] 11/19 18/12 21/6
court-imposed [1] 11/10
Courtney [7]
Courtney's [3] 4/12 4/23 4/25
courtroom [5]
courts [2] 5/6 13/18
created [1] 4/15
criminal [7]
cross [5]
cross-examination [4] 5/3 5/5 5/6 6/12
cross-examine [1] 7/15
CRR [2] 2/11 22/24
cutoff [1] 10/20

## D

damages [4] 11/13 12/21 13/3 13/11
Darren [1] 6/20
data [1] 5/17
date [3] 10/8 10/20 22/24
Daubert [7]
deadline [3] 11/8 11/10 11/19
deadlines [1] 9/13
December [1] 10/2
decision [1] 8/8
deeply [1] 9/2
defendant [26]
defendant's [9]
defense [5]
Del [1] 2/5
delayed [1] 11/1
delivery [3] 9/16 10/4 10/17
denied [2] 6/5 6/17
deny [1] 4/9
depending [1] 21/15
depends [1] 21/10

depose [2] 8/6 12/18
deposition [1] 8/5
deprived [1] 9/3
deputy [1] 18/23
described [2] 15/9 15/15
device [2] 9/16 10/17
difference [1] 15/10
difficult [1] 7/22
digest [1] 17/11
disagree [1] 14/24
disclose [5]
disclosed [7]
disclosure [8]
disclosures [3] 7/10 9/23 13/25
discoverable [1] 6/24
discovery [22]
discrepancies [1] 5/1
discretion [2] 13/18 13/24
discussed [1] 11/20
disrupt [1] 20/2
district [6]
DIVISION [1] 1/3
Dixie [1] 2/5
doctor [4] 8/1 8/6 9/17 11/17
documents [1] 10/3
dollar [1] 13/2
dollars [2] 10/19 12/20
doubt [1] 9/7
Douglas [1] 4/7
downstairs [1] 19/19
Dr. [26]
Dr. Buono [9]
Dr. Buono's [1] 9/10
Dr. Courtney [6]
Dr. Courtney's [3] 4/12 4/23 4/25
Dr. Darren [1] 6/20
Dr. Eaddy [1] 11/12
Dr. Hollern [3] 5/23 5/24 6/3
Dr. Hollern's [1] 6/7
Dr. Kenneth [1] 9/17
Drahos [2] 2/7 3/16
Drive [1] 2/9
drug [3] 9/15 10/4 10/17
Drummond [1] 12/8

## E

Eaddy [2] 9/17 11/12
East [1] 13/20
easy [2] 16/2 16/13
ECF [8]
eight [2] 15/17 15/18
electronic [1] 19/18
Eleventh [6]
engineer [1] 4/22
enlargement [2] 10/8 12/16
enormous [1] 12/17
entirely [3] 12/18 12/19 13/1
entitled [2] 13/18 22/22
environmentalist [1] 14/19
equipment [3] 19/4 19/18 19/23
Esq [5]
establish [1] 12/2
events [1] 11/7

eventual [1] 9/16
evidence [5]
examination [4] 5/3 5/5 5/6 6/12
examinations [1] 10/22
examine [1] 7/15
exception [1] 12/1
exclude [5]
excusable [1] 7/14
excuse [1] 9/1
excused [1] 7/6
exercise [1] 13/24
expected [2] 4/6 4/8
expert [8]
expertise [6]
experts [5]
expiration [1] 11/19
explain [1] 4/9
explains [1] 6/22
explanation [4] 8/10 12/5 12/15 12/22
expressing [1] 4/20
extension [1] 11/3
extra [3] 12/21 13/9 15/18

## F

F.3d [2] 11/24 12/8
F.App'x [1] 8/19
F.App'x. [1] 13/20
face [1] 18/22
fact [2] 9/1 9/12
factor [2] 12/10 12/23
factors [2] 12/4 12/15
facts [1] 4/16
factual [1] 6/13
failed [1] 6/22
fails [1] 8/21
failure [3] 8/23 11/6 12/5
fashion [1] 9/8
February [4] 1/7 3/1 9/20 10/7
February '25 [1] 10/7
Federal [1] 8/17
fentanyl [1] 9/16
fewer [1] 14/10
file [2] 19/16 19/17
filings [1] 7/23
fill [1] 15/2
Finally [1] 9/11
fine [2] 18/15 19/25
finished [1] 20/19
firm [1] 3/16
FL [3] 2/3 2/6 2/10
Flagler [1] 2/9
FLORIDA [3] 1/2 1/6 2/13
Footnote [1] 6/5
Footnote 1 [1] 6/5
foregoing [1] 22/20
Fort [2] 2/3 2/13
Fran [1] 19/7
Francine [3] 2/11 22/23 22/24
friendly [1] 16/14
front [3] 15/5 18/24 21/11
fundamental [1] 15/12
fuss [1] 18/13

**G**

game **[1]** 13/23
Genoese **[2]** 2/8 3/18
gives **[1]** 3/3
gleaned **[1]** 7/23
Gornto **[2]** 2/2 3/11
gotten **[1]** 9/1
grant **[3]** 9/9 13/9 14/1
Gray **[2]** 2/9 3/16
guidance **[1]** 18/12
guilty **[1]** 20/24

**H**

half **[1]** 13/2
half-million-dollar **[1]** 13/2
hang **[2]** 16/6 22/9
happy **[1]** 14/23
harder **[1]** 18/17
harm **[2]** 7/14 8/15
harmful **[1]** 9/2
harmless **[3]** 7/5 8/24 12/3
heard **[2]** 14/9 21/5
hearing **[2]** 13/6 13/8
hearings **[1]** 13/7
help **[2]** 15/25 16/4
helped **[1]** 16/17
Herbert **[1]** 11/24
here's **[2]** 13/5 13/5
hereby **[1]** 22/19
Highway **[1]** 2/5
hire **[1]** 13/11
Hollern **[4]** 4/7 5/23 5/24 6/3
Hollern's **[1]** 6/7
Honor **[11]**
Honorable **[1]** 1/14
hospital **[1]** 17/23
Howard **[1]** 2/4
hundreds **[2]** 10/18 12/20

**I**

I'll **[3]** 4/1 14/12 14/17
I'm **[2]** 7/21 19/14
I've **[2]** 9/1 14/22
identify **[1]** 8/21
III **[1]** 15/11
implant **[1]** 9/16
importance **[2]** 12/4 12/24
imposed **[1]** 11/10
in limine **[5]**
inadvertent **[1]** 8/14
inappropriate **[1]** 4/12
incident **[2]** 4/18 5/17
including **[1]** 6/23
increase **[1]** 13/2
Indeed **[1]** 8/11
indicated **[1]** 9/24
indicating **[1]** 10/3
individual **[1]** 6/24
information **[6]**
initial **[1]** 7/10
injuries **[4]** 4/7 4/9 4/21 5/19
injury **[1]** 6/10
insists **[1]** 10/13

installation **[1]** 10/16
instance **[1]** 8/13
Instead **[1]** 16/18
instruction **[1]** 5/8
intend **[1]** 6/3
intending **[1]** 7/2
intention **[1]** 8/11
intrathecal **[2]** 10/4 10/17
introducing **[1]** 11/17
issue **[1]** 14/1
issues **[1]** 5/2

**J**

Jacksonville **[2]** 17/25 18/2
Janier **[4]** 3/6 14/21 19/7 20/15
January **[1]** 7/1
Jarnagin **[2]** 2/8 3/17
Jenga **[1]** 16/7
Jones **[1]** 15/16
Judge **[11]**
jurors **[5]**
jury **[1]** 14/12
justice **[1]** 15/12
justified **[4]** 7/5 8/24 9/1 12/3

**K**

Kenneth **[1]** 9/17
kids **[1]** 14/25
knowledge **[1]** 7/16
knows **[1]** 16/17

**L**

lack **[2]** 12/15 12/22
late **[2]** 8/14 13/23
Lauderdale **[1]** 2/13
law **[1]** 3/16
lawyers **[6]**
leave **[1]** 20/3
letters **[1]** 10/19
light **[1]** 18/12
limine **[5]**
limited **[2]** 5/25 6/7
list **[1]** 11/14
Long vs **[1]** 13/19

**M**

M.D **[1]** 4/7
magic **[1]** 19/9
maintains **[1]** 5/13
management **[3]** 10/1 10/16 11/13
managing **[1]** 13/18
marks **[1]** 8/14
marshals **[1]** 19/19
material **[1]** 12/24
materials **[1]** 13/25
matter **[2]** 16/12 22/22
matters **[2]** 4/21 13/19
mean **[5]**
meaningful **[1]** 9/4
means **[1]** 5/9
mechanical **[1]** 1/21
mechanism **[2]** 5/19 10/17
medical **[13]**

meets **[1]** 6/13
merely **[1]** 7/13
method **[1]** 8/18
methodological **[1]** 6/13
methodology **[2]** 4/13 4/24
MIAMI **[3]** 1/3 1/6 2/6
Michael **[2]** 2/7 3/15
MICHELLE **[1]** 1/5
million **[1]** 13/2
minutes **[5]**
model **[1]** 13/11
modify **[1]** 10/10
Monday **[5]**
month **[1]** 13/7
months **[2]** 9/21 11/1
moot **[1]** 6/5
Morcom **[1]** 2/2
Morris **[1]** 8/19
motion **[23]**
motions **[2]** 3/22 14/3
move **[1]** 21/1
moved **[3]** 10/8 10/9 11/3
movement **[2]** 17/14 17/14
Mr. **[1]** 20/6
Mr. Albeja **[1]** 20/6
Ms. **[4]** 3/10 3/11 15/16 18/2
Ms. Jones **[1]** 15/16
Ms. Terry **[3]** 3/10 3/11 18/2
multiple **[2]** 9/24 10/3

**N**

NE **[1]** 2/12
neglect **[1]** 7/14
negotiations **[1]** 17/9
Neil **[2]** 2/2 3/11
neither **[1]** 7/5
nice **[1]** 16/3
Nicole **[1]** 2/8
noncompliance **[1]** 13/17
North **[1]** 2/9
note **[1]** 19/22
noted **[1]** 9/19
November **[1]** 10/2
Number **[8]**
Number 15 **[1]** 9/20
Number 76 **[2]** 4/3 6/17
Number 77 **[2]** 9/12 14/2
Number 79 **[1]** 11/15
Number 94 **[1]** 6/18
Number 96 **[1]** 9/18

**O**

objections **[3]** 6/15 14/21 14/22
objects **[1]** 9/12
obligations **[2]** 13/14 13/15
October **[1]** 7/11
October 2025 **[1]** 7/11
offer **[2]** 5/21 7/3
offering **[2]** 5/14 6/21
Official **[2]** 2/12 22/24
ongoing **[2]** 10/9 17/9
opinion **[3]** 7/3 8/7 17/14
opinions **[5]**

**O**

**opportunity [3]** 3/4 9/4 19/24
**opposing [1]** 12/6
**Orange [1]** 7/11
**order [3]** 9/20 10/10 19/19
**orthopedic [2]** 4/8 6/8
**outweigh [1]** 12/23

**P**

**p.m [5]**
**page [23]**
**page 12 [3]** 4/22 5/15 5/20
**Page 14 [1]** 6/1
**page 2 [5]**
**page 3 [3]** 10/12 10/21 10/23
**page 4 [5]**
**page 5 [3]** 7/4 8/3 8/8
**page 596 [1]** 5/11
**Page 7 [1]** 4/18
**pages [2]** 7/19 12/14
**pages 1 [1]** 7/19
**pages 4 [1]** 12/14
**pain [3]** 10/1 10/15 11/13
**Palm [1]** 2/10
**palooza [2]** 13/7 13/8
**paper [1]** 17/13
**Park [1]** 7/11
**part [1]** 4/17
**parties [2]** 9/6 17/20
**parties' [1]** 7/1
**party [5]**
**party's [1]** 13/17
**patient's [1]** 11/9
**Pause [1]** 20/10
**pencil [1]** 17/13
**people [2]** 18/21 20/24
**peremptories [1]** 14/11
**Perfect [1]** 18/15
**performed [1]** 9/17
**period [1]** 7/16
**permanency [1]** 11/14
**permits [1]** 13/16
**person [1]** 17/22
**persuaded [1]** 7/21
**Ph.D [1]** 4/5
**phase [2]** 15/11 15/14
**Phase III [1]** 15/11
**phases [3]** 14/12 15/9 15/13
**Philip [1]** 8/19
**physician [1]** 17/23
**physicians [3]** 10/1 17/16 17/24
**pick [2]** 15/14 15/17
**Pita [3]** 2/4 2/5 3/10
**plaintiff [34]**
**plaintiff's [15]**
**plan [2]** 20/13 20/17
**play [1]** 16/7
**plead [1]** 20/24
**Plus [1]** 10/21
**point [1]** 6/25
**points [1]** 11/11
**Ponte [1]** 2/3
**portion [1]** 6/4

**possibilities [1]** 4/21
**post [1]** 10/23
**post-discovery [1]** 10/23
**Prado [1]** 2/5
**preclude [1]** 10/6
**predate [1]** 10/23
**prefer [1]** 17/21
**preference [1]** 16/9
**prejudice [3]** 10/25 12/6 12/17
**prejudiced [2]** 10/14 12/22
**prepare [2]** 9/4 11/22
**prescribes [1]** 8/17
**present [1]** 5/16
**presentation [1]** 5/7
**presents [1]** 5/2
**pretrial [2]** 7/1 13/19
**prevent [3]** 4/19 6/20 11/23
**printed [1]** 14/20
**probed [2]** 5/2 5/3
**problem [5]**
**Procedure [1]** 8/17
**proceedings [3]** 1/21 22/11 22/21
**produced [2]** 1/22 10/3
**prohibit [1]** 11/16
**proof [1]** 5/9
**properly [1]** 9/4
**proposition [1]** 7/25
**propound [3]** 9/5 12/19 13/10
**protection [1]** 10/19
**provide [4]** 4/6 4/8 5/18 8/21
**provider [2]** 9/15 13/1
**provides [1]** 8/20
**pursuant [1]** 22/19
**puts [1]** 8/14

**Q**

**question [1]** 5/12
**questionnaire [1]** 14/13
**questionnaires [1]** 15/3
**questions [3]** 13/10 15/20 15/21
**quotation [1]** 8/14

**R**

**radiologist [3]** 6/21 7/9 7/17
**Radiology [1]** 7/11
**rays [2]** 7/16 7/19
**reach [2]** 4/13 14/21
**read [1]** 15/4
**reasonableness [1]** 10/18
**reasons [1]** 20/25
**rebut [2]** 10/14 10/16
**received [1]** 9/7
**Recess [1]** 16/23
**record [1]** 22/21
**recorded [1]** 1/21
**records [2]** 8/2 8/5
**recovery [1]** 11/9
**Reese [1]** 11/24
**Reese vs. Herbert [1]** 11/24
**reflect [1]** 5/17
**regularly [1]** 18/11
**rejected [1]** 7/25
**relevant [1]** 9/13

**remains [1]** 6/7
**remember [2]** 19/17 20/23
**rendition [1]** 7/18
**reopen [1]** 10/9
**reply [5]**
**report [3]** 4/12 4/25 5/1
**Reporter [3]** 2/11 2/12 22/24
**representation [2]** 5/16 6/6
**request [1]** 12/16
**required [3]** 6/14 8/18 8/22
**requirements [1]** 11/20
**responds [3]** 6/2 7/7 10/24
**response [8]**
**responses [1]** 9/23
**result [3]** 5/19 6/14 7/13
**resulted [1]** 12/20
**resulting [1]** 7/14
**retained [2]** 7/9 7/17
**retains [1]** 7/15
**revealed [1]** 7/2
**Rigby [1]** 8/19
**Rigby vs [1]** 8/19
**RKA [1]** 1/4
**RMR [2]** 2/11 22/24
**RMR-CRR [1]** 22/24
**Road [1]** 2/3
**Robinson [2]** 2/9 3/16
**Romero [1]** 12/8
**Romero vs. Drummond [1]** 12/8
**room [1]** 16/20
**routinely [1]** 18/8
**row [2]** 15/6 15/7
**Roy [1]** 1/14
**rule [9]**
**Rule 26 [3]** 8/22 11/21 13/17
**Rule 37 [4]** 8/20 8/24 12/3 13/16
**rules [2]** 11/22 15/12

**S**

**Salopek [3]** 2/11 22/23 22/24
**scheduling [2]** 9/20 10/10
**Scott [2]** 8/3 12/11
**Scott vs. Carnival [1]** 8/3
**screen [2]** 18/24 19/11
**seats [1]** 15/5
**second [9]**
**Section [1]** 22/19
**seeks [2]** 4/4 6/20
**sees [1]** 4/14
**selection [1]** 14/12
**send [1]** 14/17
**sense [1]** 20/20
**September [1]** 9/21
**seriously [1]** 14/24
**served [1]** 7/10
**serving [2]** 6/21 7/24
**sessions [2]** 9/15 9/25
**settle [1]** 16/14
**seven [1]** 9/21
**seven months [1]** 9/21
**shaky [1]** 5/10
**shorter [1]** 21/13
**shuts [1]** 11/9

**S**

sic [1]  13/19
Sicily [1]  3/5
side [2]  14/11 22/6
sides [4]  11/22 14/19 14/20 19/21
sign [1]  19/20
simple [1]  14/25
single [1]  8/6
Skip [1]  3/10
slow [1]  18/16
smaller [1]  20/16
sound [1]  21/6
SOUTHERN [1]  1/2
Spanish [1]  17/3
spinal [1]  6/8
spine [2]  4/8 5/19
state [1]  3/9
statements [1]  17/19
STATES [5]
Status [1]  1/13
stenography [1]  1/21
stopwatch [1]  11/9
stray [1]  15/7
Street [1]  2/12
substantially [3]  8/24 9/1 12/3
sufficient [1]  5/19
Suite [3]  2/3 2/6 2/10
summary [1]  8/7
supplementing [1]  9/23
supplements [1]  11/3
support [1]  10/11
Supreme [2]  5/7 5/11
surgeon [1]  4/8
surgery [2]  6/8 13/1
surgical [1]  9/16
surprise [2]  7/8 11/23
system [1]  15/13

**T**

table [1]  15/8
Take [1]  16/22
taken [1]  16/23
talk [1]  19/7
team [1]  19/11
televisions [2]  18/19 18/20
tell [1]  19/6
tells [1]  9/22
TERRY [7]
Terry vs. Carnival [3]  3/4 3/8 17/5
test [2]  19/24 20/4
testify [5]
testimony [14]
testing [2]  4/15 5/17
Thank [5]
theory [1]  7/22
therapist [1]  10/14
therapy [3]  9/14 9/24 10/15
think [3]  5/4 14/16 17/13
thought [1]  14/23
thousands [2]  10/19 12/20
thus [1]  11/16
time [6]
timely [3]  7/10 8/10 9/8

Title [1]  22/20
total [4]  22/4 22/6 22/7 22/8
traditional [1]  5/9
transcript [3]  1/13 1/21 22/21
traumatic [1]  6/9
treating [5]
treatment [6]
treatments [1]  12/20
tremendous [1]  13/22
trial [7]
trials [2]  9/15 10/4
true [1]  22/20
TUESDAY [2]  2/15 20/17
two minutes [1]  20/8
two-week [5]

**U**

U.S. [1]  5/11
unable [1]  11/7
undergone [1]  10/3
understand [2]  5/3 13/4
understanding [2]  17/17 17/18
Understood [1]  21/4
undertake [1]  11/4
unfairly [1]  10/13
unfairness [1]  13/22
unilaterally [1]  4/15
UNITED [5]
unless [1]  8/23
unsupported [1]  4/12
untimely [5]
us [4]  3/3 3/23 8/10 9/22

**V**

Vedra [1]  2/3
viable [2]  12/15 12/22
vigorous [2]  5/6 6/11
visual [2]  19/3 19/11
vs. [6]

**W**

Wade [1]  2/3
Waffles [1]  13/20
wait [1]  21/17
waiting [1]  16/18
Walter [1]  2/8
wasting [1]  16/19
Weber [1]  2/5
Wednesday [2]  20/18 20/19
week [8]
weeks [1]  17/18
weighing [1]  12/4
weight [2]  4/24 6/16
welcome [1]  19/23
West [1]  2/10
Whew [1]  16/18
wife [1]  14/19
witness [14]
witnesses [2]  13/11 14/1
WL [2]  8/3 12/11
Woolsey [1]  2/2
work [3]  16/20 17/23 19/8
works [1]  7/12

wrong [1]  5/4

**X**

x-rays [2]  7/16 7/19

**Y**

yours [1]  14/15

**Z**

Zoom [4]  17/17 17/19 18/5 18/14